# United States Court of Appeals
## For the First Circuit

No. 02-1754

UNITED STATES OF AMERICA,

Appellee,

v.

NORMA NIEVES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Lipez, Circuit Judges.

Tina Schneider, for appellant.
David Hennessy, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, were on brief, for
appellee.

March 6, 2003

**TORRUELLA**, **Circuit Judge**.  On March 26, 2002, Norma Nieves ("Nieves") pled guilty to an indictment charging that she conspired to distribute crack cocaine ("crack") from September 13, 1999 to December 10, 1999, in violation of 21 U.S.C. § 846 (2000), and distributed crack and cocaine hydrochloride, in violation of 21 U.S.C. § 841.  On June 7, 2002, the district court sentenced her to 60 months imprisonment, a supervised release term of four years on the conspiracy count and three years on the distribution counts, and a $500 special assessment.

Nieves challenges her sentence, arguing that the district court erred in holding her responsible for a drug sale as to which she had consistently disputed her involvement and erred in giving her a term of supervised release in excess of the default statutory maximum.  For the following reasons, we affirm.

## I.  Attack on Term of Imprisonment

Because Nieves pled guilty to an indictment that did not contain a specific drug quantity, the district court determined whether Nieves was accountable for 1.63 grams of crack sold on December 7, 1999 by Alex Nieves ("Alex"), Nieves's son and co-conspirator, to a cooperating witness ("CW").

### A.  Arguments Before the District Court

The government contended that the facts supported holding Nieves accountable under an aiding and abetting theory, U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Sentencing

Guidelines") § 1B1.3(a)(1)(A) (2002), or under a theory of jointly undertaken criminal conduct, U.S.S.G. § 1B1.3(a)(1)(B). According to the presentence report, on December 7, 1999, Alex delivered crack to the CW at the CW's home and said that he would return with more. When Alex failed to return, the CW called Nieves's residence. The CW inquired as to Alex's whereabouts, and Nieves asked if Alex had just delivered crack to the CW. The CW responded that Alex had, but he was supposed to deliver more. Nieves then agreed to call the CW if she heard from Alex. A short time later, Alex called the CW and said that he was on his way; he then delivered additional crack to the CW.

In her objection to the presentence report, Nieves argued that she could not be held accountable for the December 7 sale because she withdrew from the drug conspiracy in October of 1999, when she told the CW that due to her pregnancy she had stopped using drugs and would no longer help the CW acquire drugs. In response, the CW congratulated her on her decision and wished her luck with her pregnancy. Nieves did not have further contact with the CW until December 7, 1999, when the CW called Nieves's residence looking for Alex. Nieves contended that nothing in the phone call indicated that Nieves either spoke with Alex before he completed the cocaine sale or knew that Alex supplied the CW with drugs until after the sale was completed.

After considering the parties' arguments, the district court held Nieves accountable for the 1.63 grams of crack, finding "that she was a part of [the December 7, 1999] transaction, aided and abetted its completion, and cooperated with the further contact between the supplier and her son."

By including the December 7 sale, the total amount of cocaine base attributable to Nieves rose above five grams and subjected her to a mandatory minimum five-year sentence of imprisonment. Nieves challenges the district court's attribution of the December 7 sale to her.

**B. Standard of Review**

At sentencing, the government must prove drug quantity by a preponderance of the evidence. United States v. Eke, 117 F.3d 19, 22 (1st Cir. 1997). Nieves's attack on the sentencing court's inclusion of the December 7 sale is an attack on the court's findings of fact, which we review for clear error, United States v. Caba, 241 F.3d 98, 102 (1st Cir. 2001), and an attack on its application of law, which we review under a sliding-scale standard, United States v. Howard (In re Extradition of Howard), 996 F.2d 1320, 1328 (1st Cir. 1993). "The standard of review applicable to mixed questions usually depends upon where they fall along the degree-of-deference continuum: the more fact-dominated the question, the more likely it is that the trier's resolution of it will be accepted unless shown to be clearly erroneous." Id.

-4-

### C. Relevant Conduct

Nieves argues that the government did not present sufficient evidence for the district court to hold her responsible for the December 7 sale under either an aiding and abetting theory or under a theory of jointly undertaken criminal conduct. We disagree. The sentencing guidelines instruct the district court to hold the defendant responsible both for acts she personally committed and for acts attributable to her as relevant conduct. See U.S.S.G. § 1B1.3.

The district court did not err in finding by a preponderance of the evidence that Nieves aided and abetted the final drug sale. See U.S.S.G. § 1B1.3(a)(1)(A) (stating that the court shall determine the sentencing range on the basis of "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant"). The telephone call in which Nieves agreed to tell Alex to call the CW -- while aware that the CW wanted to purchase drugs -- established Nieves's knowledge of the sale and constituted sufficient evidence to support a finding of aiding and abetting. United States v. Taylor, 54 F.3d 967, 975 (1st Cir. 1995) (stating that the crucial element of aiding and abetting is a showing -- "that may be made wholly on the basis of circumstantial evidence" -- "that the defendant consciously shared the principal's knowledge of the underlying criminal act, and intended to help the principal").

Similarly, the district court did not err in finding by a preponderance of the evidence that Nieves was responsible for the December transaction under a conspiracy theory. U.S.S.G. § 1B1.3 (a)(1)(B) (stating that "in the case of jointly undertaken criminal activity," the defendant's guideline range is determined by "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"). Nieves admitted to having arranged prior drug purchases for the CW and to having had a drug-trafficking relationship with Alex. This evidence coupled with the telephone call between Nieves and the CW constituted sufficient evidence for finding that the December 7 transaction was "a reasonably foreseeable act[] . . . of others in furtherance of the jointly undertaken criminal activity." Id.

Nieves argues that she cannot be held responsible under U.S.S.G. § 1B1.3(a)(1)(B) because she had successfully withdrawn from the conspiracy prior to the December 7 sale. To withdraw from an ongoing conspiracy, Nieves must do more than merely cease selling drugs. United States v. Piper, 298 F.3d 47, 53 (1st Cir. 2002). "In order to withdraw, a conspirator must act affirmatively either to defeat or disavow the purposes of the conspiracy." United States v. Dunn, 758 F.2d 30, 37 (1st Cir. 1985) (quoting United States v. Phillips, 664 F.2d 971, 1018 (5th Cir. 1981)). "Typically, there must be evidence of a full confession to authorities or a communication by the accused to his co-

conspirators that he has abandoned the enterprise and its goals."
United States v. Juodakis, 834 F.2d 1099, 1102 (1st Cir. 1987) (per
curiam).

Nieves contends that she withdrew from the conspiracy
when she told the CW that due to her pregnancy she would no longer
take or sell drugs.  Even assuming that the district court believed
Nieves's rendition of her conversation with the CW, the sentencing
court did not err in finding that by later agreeing to help the CW
contact Alex in order to procure drugs, Nieves had not truly
"disavow[ed] the purposes of the conspiracy."  United States v.
Piva, 870 F.2d 753, 757 (1st Cir. 1989).  Consequently, we find
that the district court did not err in holding Nieves accountable
for the 1.63 grams of crack in dispute.

## II.  Supervised Release Challenge

Nieves's final argument is that the sentencing court
committed Apprendi error by sentencing her to a period of
supervised release beyond the statutory maximum.[1]  The conspiracy
count was a Class C offense, for which 18 U.S.C. § 3583(b)
authorizes only a three-year term of supervised release.

---

[1]  To the extent that Nieves attempts to make out a claim based on
U.S.S.G. § 5D1.2, see United States v. Nelson-Rodríguez, No. 00-
1422, slip op. at 73-74 (1st Cir. Feb. 7, 2003), that claim has
been procedurally defaulted by her failure to advert to it in her
opening brief.  United States v. Brennan, 994 F.2d 918, 922 n.7
(1st Cir. 1993) (stating that "it is well settled that a legal
argument made for the first time in an appellant's reply brief
comes too late and need not be addressed" (citation omitted)).

Therefore, she argues, the court erred in sentencing her to four years of supervised release. As Nieves acknowledges, her supervised release claim is reviewable only for plain error because she failed to make her Apprendi claim below. United States v. Allen, 312 F.3d 512, 514 (1st Cir. 2002).

According to Apprendi v. New Jersey, 530 U.S. 466, 476 (2000), it is a constitutional requirement "that any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Nieves claims that the district court erred because the body of the indictment did not specify any amount of drugs, yet the court sentenced her to a term of supervised release in excess of the maximum sentence allowable under 21 U.S.C. § 841(b) and 18 U.S.C. § 3583(b).

Although Nieves phrases her claim in terms of Apprendi, the claim ultimately boils down to a question of statutory construction, a question our recent decisions have answered adversely to Nieves. In United States v. López, 299 F.3d 84 (1st Cir. 2002), we determined that the "at least" language in 21 U.S.C. § 841(b)(1)(B) "establishes a mandatory minimum term of supervised release, but no maximum." López, 299 F.3d at 89-90. Then in United States v. Cortés-Claudio, 312 F.3d 17, 18-19 (1st Cir. 2002), we held that 18 U.S.C. § 3583(b) "does not limit the length of supervised release terms in cases under § 841." Consequently,

-8-

the maximum term of supervised release that the sentencing court could have imposed ranged from the mandatory minimum set forth in § 841(b) up to life.  Nieves is therefore left without a viable claim because "Apprendi simply does not apply to guideline findings (including, inter alia, drug weight calculations) that increase the defendant's sentence, but do not elevate the sentence to a point beyond the lowest applicable statutory maximum." United States v. Caba, 241 F.3d 98, 101 (1st Cir. 2001).

### III.  Conclusion

For the reasons stated above, we **affirm.**