# United States Court of Appeals
## For the First Circuit

No. 00-1203

UNITED STATES OF AMERICA,

Appellee,

v.

REYNALDO BARNES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Campbell, Senior Circuit Judges.

Paul F. Markham for appellant.
Jennifer Hay Zacks, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, and Heidi E. Brieger, Assistant United States Attorney, were on brief, for appellee.

March 29, 2001

**SELYA, Circuit Judge.** A jury convicted defendant-appellant Reynaldo Barnes on one count of conspiracy to import cocaine, 21 U.S.C. § 963, and two counts of unlawful use of a communication facility in connection with drug-trafficking activities, id. § 843(b). The district court sentenced him to serve 115 months in prison.[1] The appellant challenges his conviction, arguing that the government presented insufficient evidence of his guilt. He also challenges his sentence, principally by invoking the Supreme Court's recent decision in Apprendi v. New Jersey, 120 S. Ct. 2348 (2000). We affirm the conviction. We direct a slight modification in the sentence and, as modified, affirm it as well.

**I**

We present the facts in the light most hospitable to the government's theory of the case, consistent with record support. United States v. Alicea, 205 F.3d 480, 482 (1st Cir.), cert. denied, 121 S. Ct. 256 (2000).

In this instance, the jury supportably could have found that the appellant, in an effort to expand his ongoing trade in illegal narcotics, told one of his quondam customers that his

---

[1]To be precise, the court imposed a sentence of 115 months from the date of the judgment (in lieu of a 168-month sentence from the date of the appellant's initial incarceration), to be served concurrently with the undischarged portion of a sentence that the appellant already was serving.

sister, Marla Barnes, could provide the sizable quantities of cocaine that the customer professed to require. The customer, in reality an undercover agent employed by the federal Drug Enforcement Administration (DEA), accepted the invitation. He thereafter met with the Barnes siblings, and Marla Barnes made preliminary arrangements (or so she said) for a large purchase of cocaine through her connections in Panama.

As an initial step in the process, Marla Barnes sold a one kilogram sample of cocaine to the undercover agent. The agent paid the appellant what amounted to a finder's fee ($500). For a variety of reasons, the larger deal never materialized. The Barnes siblings nonetheless were arrested, indicted, tried, and found guilty.[2]

The appellant's insufficiency challenge posits that he did no more than introduce the undercover agent to his sister. What happened thereafter, he asseverates, was not his doing. We turn to this asseveration.

When a defendant contests the sufficiency of the evidence presented at trial, we must take that evidence in the light most favorable to the government "and decide whether that

---

[2]The appellant and his sister were tried together, and we consolidated their appeals for oral argument. Because the appeals raise significantly different issues, however, we have opted to decide them by means of two separate opinions. This is the first of those opinions.

evidence, including all plausible inferences extractable therefrom, enables a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime." United States v. Noah, 130 F.3d 490, 494 (1st Cir. 1997). In forming its conclusion, a reviewing court "need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in 'a plausible rendition of the record.'" United States v. Echeverri, 982 F.2d 675, 677 (1st Cir. 1993) (quoting United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992)).

We start with the principal charge: conspiracy to import cocaine. To convict a defendant of conspiracy, the prosecution must "show beyond a reasonable doubt that a conspiracy existed and that a particular defendant agreed to participate in it, intending to commit the underlying substantive offense . . . ." United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993). Proof of the requisite agreement requires no particular formalities: "the agreement may be express or tacit and may be proved by direct or circumstantial evidence." Id. Moreover, "[d]ue to the clandestine nature of criminal conspiracies, the law recognizes that . . . a common purpose and plan may be inferred from a

development and collocation of circumstances." United States v. Escobar-de Jesús, 187 F.3d 148, 175 (1st Cir. 1999) (quoting United States v. Tejeda, 974 F.2d 210, 212 (1st Cir. 1992)) (omission in original), cert. denied, 52 U.S. 1176 (2000).

In this case, perscrutation of the record persuades us, without serious question, that the government provided ample evidence that the appellant intended to enter into an agreement to import cocaine and knowingly assumed conspiratorial responsibility. The jury, taking the proof favorably to the government, rationally could have found that while the appellant was actively engaged in selling narcotics to the undercover DEA agent, he suggested that he could help his buyer to obtain larger quantities of cocaine through a family contact; and that, when the agent asked him to arrange a meeting to advance this prospect, the appellant not only complied but also attended the tête-à-tête and took an active part in the discussion of how drugs could be smuggled into the United States from Panama. The jury also rationally could have found that, as a direct result of this confabulation, the appellant's sister laid the groundwork for a substantial drug purchase in Panama, with a view toward importing the contraband into the United States. Perhaps most damning, the prosecution offered credible evidence that, after the bargain had been struck, the protagonists

-5-

executed a one kilogram "sample" sale, following which the appellant accepted a $500 cash payment for bringing the protagonists together.

To be sure, the appellant attempts to minimize his role by claiming that he merely arranged a meeting as an accommodation — nothing more — and that the payment was a mere gratuity. Here, however, reasonable jurors surely could have rejected the appellant's spin on what had transpired and concluded — as these jurors apparently did — that the appellant was part and parcel of the conspiracy. In examining evidence and drawing inferences from it, "criminal juries are not expected to ignore what is perfectly obvious." Echeverri, 982 F.2d at 679.

Nor is it any defense that the appellant was not a prime mover in the conspiracy. After all, a conspiracy is a continuum. Once a participant knowingly helps to initiate the agreement and set it in motion, he assumes conspirator's responsibility for the foreseeable actions of his confederates within the scope of the conspiratorial agreement,[3] whether or not he is aware of precisely what steps they plan to take to

---

[3]There is an exception, of course, for cases of abandonment, see United States v. Munoz, 36 F.3d 1229, 1234 (1st Cir. 1994); United States v. Juodakis, 834 F.2d 1099, 1102-03 (1st Cir. 1987)(per curiam), but the appellant did not raise an abandonment defense in this case.

-6-

accomplish the agreed goals. E.g., United States v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir. 1989). On this basis, the government presented more than enough evidence to ground the appellant's conviction on the conspiracy count.

The remaining two counts of the indictment charge unlawful use of a communications facility in connection with drug-trafficking activities. Apart from his assault on the sufficiency of the evidence vis-à-vis his conspiracy conviction, the appellant makes no independent attempt to argue against the sufficiency of the evidence presented on these charges. Any such argument is, therefore, foreclosed. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that arguments not developed on appeal are deemed abandoned). We add, moreover, that the record does not lend the slightest support to such a challenge; the proof seems unassailable that critical aspects of the conspiracy were facilitated by telephonic means.

For these reasons, we uphold the finding of guilt as to each and all of the counts of conviction.

**II**

The appellant's misgivings about his sentence have more bite. The lower court imposed an incarcerative term variously characterized as 115 or 168 months, see supra note 1, together

with a five-year term of supervised release.  Adopting arguments made by Marla Barnes, the appellant attacks this sentence on three grounds.

## A.

The appellant contends that the district court clearly erred in its drug-quantity finding.[4]  We do not linger over this contention.  Generally, when a narcotics transaction is unconsummated, the sentencing court may base its drug-quantity finding on the negotiated amount of contraband.[5]  See USSG §2D1.1, cmt. (n.12).  The court may, however, use a lower figure if the defendant proves that he "did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance."  Id.  The defendant has

_____

[4]The significance of this finding relates to the calculation of the appellant's guideline sentencing range. The quantity of drugs involved in the offense is a key integer used in determining an offender's base offense level. See USSG §2D1.1(a)(3).  In turn, the offense level, as adjusted, interlocks with the offender's criminal history category to determine the applicable guideline sentencing range. See generally id. §1B1.1 (explaining this procedure).

[5]When a defendant is charged with both a completed substantive offense and an attempt, the consummated transaction may, in some circumstances, more accurately reflect the scope of the offense.  In that event, the sentencing court may in its discretion focus upon the amount of drugs involved in the consummated transaction rather than the negotiated quantity. USSG §2D1.1, cmt. (n.12).  Here, however, the sale of a sample clearly does not provide an objective measure of the scope of the frustrated transaction.

the burden of persuading the court that he lacked intent or capacity.[6] See id. We apply these principles here.

For sentencing purposes, the district court attributed twenty to fifty kilograms of cocaine to the appellant. The appellant asserts that this figure lacked any evidentiary foundation. But the jury supportably found the appellant to be complicit in the charged conspiracy, and the uncontradicted evidence was that the conspirators aspired to import 110 kilograms of cocaine into the United States. The appellant failed to offer any evidence that the conspirators did not intend, or were unable to procure and arrange for, the importation of this amount of contraband. Thus, the only credible argument against holding the appellant responsible for twenty to fifty kilograms of cocaine is that the quantity should have been considerably higher. Any error was, therefore, harmless. See United States v. Hernández, 218 F.3d 58, 71 (1st Cir. 2000) (finding determination of drug quantity harmless, even if erroneous, since it did not affect the defendant's

---

[6]This is a change from prior law. E.g., United States v. Tillman, 8 F.3d 17, 19 (11th Cir. 1993) (per curiam) (assigning burden of proof on this issue to the government). The Sentencing Commission reallocated the devoir of persuasion well before the events at issue here. See USSG §2D1.1, cmt. (n.12) (Nov. 1995).

sentence); <u>United States</u> v. <u>Ortiz</u>, 23 F.3d 21, 28 (1st Cir. 1994) (similar).

## **B.**

In <u>Apprendi</u>, 120 S. Ct. at 2362-63, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The appellant urges that the term of immurement imposed upon him offended this rule. Because the appellant did not raise this issue below, we review his claim of an <u>Apprendi</u> violation for plain error. <u>See</u> <u>United States</u> v. <u>Robinson</u>, ___ F.3d ___, ___ (1st Cir. 2001) [No. 00-1674, slip op. at 6]. We discern none.

The narcotics laws establish different maximum sentences depending, inter alia, on the type and quantity of drugs involved in any particular offense. With respect to the importation of cocaine, the applicable penalty provisions are found in 21 U.S.C. § 960(b). Section 960(b)(3) establishes the default statutory maximum: a sentence no greater than twenty years for importing, or conspiring to import, any substance containing less than 500 grams of cocaine. Because the appellant's sentence — whether viewed as 115 months or 168 months, <u>see</u> <u>supra</u> note 1 — falls below the default statutory

-10-

maximum, the Apprendi rule is inapposite to the imposition of the appellant's prison term. As we have said, "[n]o Apprendi violation occurs when the district court sentences a defendant below the default statutory maximum, even though drug quantity, determined by the court under a preponderance-of-the-evidence standard, influences the length of the sentence imposed." Robinson, ___ F.3d at ___ [slip op. at 7].

## C.

The appellant's final plaint has more force. In addition to a prison term, the court also meted out a five-year supervised release term. However, section 960(b)(3) — in contrast to the five-year term mentioned in section 960(b)(1) — provides for a supervised release term of three years. 21 U.S.C. § 960(b)(3). Given this court's previous holding that supervised release terms set out in particular sections of the drug laws establish the maximum terms for violations of those sections, see Suveges v. United States, 7 F.3d 6, 10 (1st Cir. 1993) (construing 21 U.S.C. § 841(b)), we think that Apprendi requires that this aspect of the appellant's sentence be reduced to three years.[7] This reduction can, of course, be accomplished

---

[7]We recognize that there is a split of authority in regard to whether terms of supervised release specified in 21 U.S.C. § 841 can or cannot exceed those authorized by 18 U.S.C. § 3583(b). Compare, e.g., United States v. Good, 25 F.3d 218, 221 (4th Cir. 1994) (holding that such terms are maximum terms),

-11-

without either disturbing the remainder of the sentence or reconvening the disposition hearing.  <u>See</u> Fed. R. Crim. P. 43(c)(4); <u>cf.</u> <u>United States</u> v. <u>Jackson</u>, 923 F.2d 1494, 1496-97 (11th Cir. 1991) (holding that remand for correction of an illegal sentence does not require the defendant's presence if the correction palliates the sentence).

### III

We need go no further.  The short of it is that the evidence in the case, read in the required light, fully supports the jury's verdict.  The sentence itself is proper, except for one particular.  To repair that defect, we instruct the lower court, on remand, to truncate the supervised release term to three years.  In all other respects, the conviction and sentence are affirmed.

**<u>It is so ordered</u>.**

---

with, <u>e.g.</u>, <u>United States</u> v. <u>Page</u>, 131 F.3d 1173, 1177-80 (6th Cir. 1997) (contra).  We consider ourselves bound by <u>Suveges</u> and, thus, do not probe the point further.