# United States Court of Appeals
## For the First Circuit

No. 00-2405

UNITED STATES,

Appellee,

v.

ANGEL LOPEZ,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Schwarzer,* Senior District Judge.

R. Scott Miller, Jr. for appellant.

Susan M. Poswistilo, Assistant United States Attorney,
with whom Michael J. Sullivan, United States Attorney, and Dina
Michael Chaitowitz, Appellate Chief,  were on brief, for appellee.

August 14, 2002

—————————
        * Of the Northern District of California, sitting by
designation.

**LIPEZ, <u>Circuit Judge</u>**.  After Angel Lopez pleaded guilty to charges that he trafficked in heroin, he was sentenced to 216 months in prison and five years of supervised release.  Lopez appeals his term of incarceration on the ground that the district court erred in giving him a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(3) for distribution of heroin inside a prison. He appeals his supervised release term on the ground that it exceeds the maximum term permitted under 21 U.S.C. § 841(b)(1)(B). Seeing no merit in his arguments, we affirm.

## I.

On July 8, 1999, Lopez and nineteen co-defendants were charged in a multi-count drug trafficking indictment.  Lopez was charged with conspiracy to distribute heroin from about September of 1996 to about March of 1999, in violation of 21 U.S.C. § 846, and with twelve counts of distributing heroin, in violation of 21 U.S.C. § 841(a)(1).  On May 19, 2000, Lopez pleaded guilty to all charges.[1]  He was sentenced on October 18, 2000, to 216 months in prison and five years of supervised release.

"Because this appeal involves sentencing issues following a guilty plea, we take the background facts from the presentence report" (PSR).  <u>United States</u> v. <u>Brady</u>, 168 F.3d 574, 576 (1st Cir. 1999).  In August, 1996, the Drug Enforcement Administration (DEA) received information from a confidential informant that Wilfredo

_____

[1]  Lopez also was charged with, and pleaded guilty to, conspiring to distribute marijuana.  He was sentenced for that offense on August 31, 2000.

Cortes (Lopez's half-brother), who at the time was incarcerated in a Massachusetts state prison, was running a heroin distribution operation in and around Lynn, Massachusetts, in conjunction with Lopez and Christine James (Cortes' girlfriend). The confidential informant put Cortes in contact with a prospective heroin purchaser who, unbeknownst to the conspirators, was an undercover Massachusetts state police officer. Cortes informed Lopez and James that the undercover officer would be contacting them to purchase heroin. On numerous occasions between October of 1996 and February of 1999, Lopez obtained heroin from co-defendants Domingo Acevedo and Rafael Acevedo and sold it to the undercover officer. Notwithstanding his incarceration, Cortes had "telephone conversations with both Lopez and James about the heroin sales to the undercover officer and the return of money to [Cortes] from the sales."

The plea agreement stipulated that Lopez was responsible for 733.9 grams of heroin and that his base offense level was 30. The PSR recommended that Lopez receive a three-level enhancement for his role in the offense pursuant to U.S.S.G. § 3B1.1(b) ("If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels."). The PSR also recommended a three-level reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1. In addition, and of importance to this appeal, the PSR recommended a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(3), which provides: "If the object

of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility, increase by 2 levels."

Lopez's counsel objected at the sentencing hearing to the two-level increase under § 2D1.1(b)(3) on the ground that "there's no evidence that my client actually was involved in bringing any drugs into the prison."  The government concurred, explaining that while "there were tape recorded conversations [between Cortes and James] in which there was a lot of talk in August of 1996 about possibly having heroin smuggled into the prison," there was "no evidence that any heroin was actually smuggled into the prison."  The government's position, the prosecutor explained, was that "the object of the conspiracy was for the undercover officer to make purchases of heroin on the outside from either Mr. Lopez or Ms. James and that money would then be funneled back to Mr. Cortes in the prison."

The district court declined to adopt the government's position:

> contrary to the argument that has been made to me, I find by a fair preponderance of the evidence that the conspiracy to import drugs into the prison did involve Mr. Angel Lopez knowingly and that the two level enhancement does apply in his case.

This conclusion resulted in an adjusted offense level of 32 under the drug guidelines.  Because Lopez's criminal history category was VI, his sentencing range was 210 to 262 months.[2]  The district

---

[2] Lopez's criminal history category was VI because he qualified as a career offender.  See U.S.S.G. § 4B1.1 ("A career

-4-

court sentenced Lopez to 216 months in prison and five years of supervised release.  Lopez appeals.

## II.

We review the sentencing court's factual findings, which must be supported by a preponderance of the evidence, for clear error.  United States v. Damon, 127 F.3d 139, 141 (1st Cir. 1997).  "Under this standard, a district court's determination will be treated with deference and will be reversed only if, after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed."  United States v. Rust, 976 F.2d 55, 57 (1st Cir. 1992) (internal quotation marks omitted).

In challenging the two-level enhancement under U.S.S.G. § 2D1.1(b)(3), Lopez asserts that just one of the PSR's 425 paragraphs describes a conspiracy to distribute drugs inside a prison.  Paragraph seven of the PSR states:

> DEA obtained tapes of outgoing collect telephone calls placed by [the incarcerated] Cortes beginning on August 19, 1996. . . . The tapes revealed numerous telephone calls from Cortes to James in which they discussed the fact that James was holding heroin for Cortes and that arrangements were being made to have the heroin delivered into the prison. At various times, Cortes instructed James to divide the heroin, to wait for the call of the person who would be smuggling the heroin into the prison, to get a note with instructions from [Lopez], to give [Lopez] a quantity of money, and to contact "my brother" and "Amy" (Tavis).  There were multiple conversations

offender's criminal history category in every case shall be Category VI.").

-5-

> about these topics between Cortes and James
> from August 19, 1996 through August 25, 1996.

Lopez argues that "while it may be true that Cortes and James discussed distributing drugs within a prison, there is no allegation that either Cortes or James ever spoke to Lopez about this idea." He points out that the government characterized these telephone calls at the sentencing hearing as simply "a lot of talk" about possibly smuggling heroin into the prison, and cites the prosecutor's assertion that there was no evidence that any such smuggling was in fact accomplished. The government takes a different position on appeal, arguing that the two-level enhancement was proper.

We note three preliminary points. First, "a sentencing court may consider facts contained in the PSI Report as reliable evidence." United States v. Cruz, 120 F.3d 1, 2 (1st Cir. 1997). Second, the district court was free to disregard the government's position at sentencing regarding the § 2D1.1(b)(3) enhancement. See United States v. Valencia-Copete, 792 F.2d 4, 7 (1st Cir. 1986) ("[O]ur cases clearly bar any relief merely because a judge refuses to accept the sentence recommendations of a prosecutor, so long as the defendant has not been misled."). Third, in order to conclude that Lopez had participated in a conspiracy the object of which was the distribution of drugs inside a prison, the district court was not required to find that Lopez had committed an overt act in furtherance of that conspiracy. See United States v. Cruz, 981 F.2d 613, 617 & n.7 (1st Cir. 1992) (explaining that, in contrast

to common-law conspiracy, government does not have to prove an overt act to win a conviction under 21 U.S.C. § 846).

Lopez wrongly asserts that only paragraph seven of the PSR relates to the district court's findings. Paragraph twenty-one of the PSR reports that Lopez at one point asked the undercover officer if the heroin she was purchasing was for her husband, her boyfriend, or "someone in jail." As the government argues, this was "an odd question unless prison sales was something in which Lopez was actively involved."

Paragraph five of the PSR indicates that law enforcement officials had received a report from a confidential informant that Cortes, James, <u>and Lopez</u> were involved in the distribution of heroin inside a state prison:

> In August 1996, DEA received information from a confidential informant ("CI") that Cortes was running a heroin distribution business inside state prison and that he was assisted in this endeavor by Lopez and James. The CI reported that Cortes recruited customers by offering them a percentage of the heroin that was smuggled into the prison and that he had persons smuggle heroin into the prison during visits with inmates. The CI reported that a customer would make arrangements to have money sent to Lopez or James, that heroin would be smuggled into the prison and delivered to Cortes, that Cortes would give a portion of the heroin to the customer, and that Cortes would sell the remainder. The CI provided DEA with the home telephone numbers of both Lopez and James in Lynn.

Although the confidential informant's statement is hearsay, we have held that a sentencing court "'may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient

-7-

indicia of reliability to support its probable accuracy.'" United States v. Tardiff, 969 F.2d 1283, 1287 (1st Cir. 1992) (quoting U.S.S.G. § 6A1.3(a)); see also United States v. Powell, 50 F.3d 94, 103 (1st Cir. 1995) (upholding sentencing determination based in part on hearsay evidence in presentence report supplied by confidential informant). Here, the government points out that the confidential informant's account was corroborated in significant respects. James and Lopez were indeed running a heroin distribution operation, and recorded conversations between Cortes and James corroborated the confidential informant's assertion that smuggling heroin into a prison was among their objectives. We therefore conclude that the confidential informant's report in paragraph five of the PSR had "sufficient indicia of reliability to support its probable accuracy." Tardiff, 969 F.2d at 1287 (internal quotation marks omitted).

Lopez is correct that paragraph seven of the PSR contains no direct evidence that he conspired to distribute heroin inside a prison. Paragraph seven does, however, constitute circumstantial evidence implicating Lopez in that project, and it is not the only evidence found in the PSR. Based on (1) Lopez's extensive participation in the heroin business with Cortes and James; (2) the discussions between Cortes and James about plans to distribute heroin inside a prison with Lopez's assistance; (3) Lopez's question to the undercover officer about purchasing heroin for "someone in jail"; and (4) the confidential informant's report, we cannot say that the district court clearly erred in drawing the

inference, by a preponderance of the evidence, that Lopez had conspired with Cortes and James to distribute heroin inside a prison.  See Damon, 127 F.3d at 141.

We acknowledge that the actual drug sales documented in the PSR were made by Lopez to the undercover officer and did not entail distribution inside a prison.  But that fact simply reflects the nature of the government's undercover operation.  As the government points out, nothing in the guideline requires that distribution inside a prison be the sole object of the conspiracy.  See U.S.S.G. § 2D1.1(b)(3), historical notes (explaining that 1995 amendment added two-level enhancement "for an offense involving a prison or detention facility" (emphasis added)).  We therefore affirm the two-level enhancement.

### III.

In addition to a prison term of 216 months, Lopez received a five-year term of supervised release.  On its face, this term is consistent with the statute under which he was sentenced, 21 U.S.C. § 841(b)(1)(B), which provides for a term of supervised release of "at least 4 years."  However, Lopez cites United States v. Barnes, 244 F.3d 172, 178 (1st Cir. 2001), for the proposition that "supervised release terms set out in particular sections of the drug laws establish the maximum terms for violations of those sections."  Based on this statement in Barnes, he argues that his five-year term of supervised release should be vacated because it "exceeds the term set forth in [21 U.S.C. § 841(b)(1)(B)]."  He points out that 21 U.S.C. § 841(b)(1)(B) provides for a term of

supervised release of "at least 4 years" and argues that according to <u>Barnes</u> four years is the maximum term of supervised release to which he can be sentenced.

The government responds that the phrase "at least" establishes a mandatory minimum, but no maximum, and that a five-year term of supervised release is therefore permissible under § 841(b)(1)(B). We agree with the government that the five-year term of supervised release Lopez received is consistent with the statutory provision for a term of supervised release of "at least 4 years." § 841(b)(1)(B). To the extent that <u>Barnes</u> suggests otherwise, we conclude that the above-quoted statement in <u>Barnes</u>, 244 F.3d at 178, is limited to the specific facts of that case.

**<u>Affirmed.</u>**