**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 03-1768

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL MORGAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, U.S. District Judge]

Before

Selya, Circuit Judge,

Porfilio,* Senior Circuit Judge,

and Lynch, Circuit Judge.

John Nicholas Iannuzzi for appellant.
Mark E. Howard, Assistant United States Attorney, with
whom Thomas Colantuono, United States Attorney, was on the
brief for appellee.

September 2, 2004

*Of the Tenth Circuit, sitting by designation.

**PORFILIO, <u>Senior Circuit Judge</u>.** Michael Morgan pled guilty to conspiracy to distribute in excess of 100 kilograms of marijuana in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1), while reserving the right to challenge at his sentencing hearing the quantity of drugs for which he was responsible. He now appeals the 40-month sentence imposed on three principal grounds. Finding no merit in this triumvirate, we affirm.

In November 2001, the government charged Morgan, a Jamaican musician who became a United States citizen the previous month, and Beverly Pryme, also Jamaican and the mother of three of his children, with conspiracy to distribute over 100 kg. of marijuana from January 1990 until October 22, 2001. The indictment was the happenstance of the 1999 arrest of Daniel Merritt for a domestic assault in Merrimack, New Hampshire; he confessed to selling approximately 262 pounds of marijuana supplied by Morgan, a former college friend, and Pryme. Facing drug and tax evasion charges, Merritt agreed to cooperate, a decision which netted him a 27-month sentence.

To that end, in July 2001, Merritt bridged the two-year hiatus since his arrest and twice telephoned Morgan, recording the conversations. Later that month, Merritt met Pryme for the first of two controlled buys, neither of which

Pryme disclosed to Morgan who was traveling abroad some of that time. Pryme was arrested during a third controlled buy, and the two were subsequently indicted.

On December 4, 2001, Morgan proffered a statement to the government. He described his early college dealings with Merritt through 1998; his surprise to hear from Merritt again in 2001; and his disagreement with Pryme for continuing to supply larger quantities of marijuana from suppliers in New York with whom Pryme was "intimate" but called "murderers." Morgan stated his primary sources were "Big Dred," "Mark," and his brother, "Tender."

On July 10, 2002, the government sent Morgan a proposed plea agreement in which it agreed to drop two counts in exchange for Morgan's agreeing to plead guilty to a conspiracy involving over 100 kg. of marijuana. Morgan did not execute the agreement and attempted an amendment to make the agreement "subject to a disclaimer" of the "weight and scope." With the plea agreement in limbo, the parties submitted briefs to the district court addressing whether Morgan could plead guilty to the offense but reserve for sentencing the weight of drugs attributed to his involvement.

On November 5, 2002, the government refused to meet again with Morgan for safety valve consideration, explaining

to his counsel the decision was "[i]n light of your client's continued insistence that he is not responsible for 100 or more kilograms of marijuana."  On November 8, 2002, however, the district court ruled on Morgan's motion, holding that under United States v. O'Campo, 973 F.2d 1015, 1026 (1st Cir. 1992), "the base offense level of a co-conspirator at sentencing should reflect only the quantity of drugs he reasonably foresees [] is the object of the conspiracy to distribute after he joins the conspiracy."  Then applying Derman v. United States, 298 F.3d 34, 42-43 (1st Cir. 2002), which addressed the duties of the judge and jury in a drug conspiracy case, post-Apprendi v. New Jersey, 530 U.S. 466 (2000), the court concluded "defendant may enter a plea of guilty to the conspiracy charged in count one and reserve the right to contest at sentencing the quantity of drugs for which he is to be held responsible under the law" contingent upon his agreeing to additional conditions.[1]

---

[1]The conditions were:
> (1) he must admit that the conspiracy as a whole involved in excess of 100 kilograms of marijuana, while reserving the right to contest at sentencing the quantity of marijuana for which he can be held legally accountable;
> (2) he must acknowledge his understanding that the maximum sentence for the conspiracy charged is forty years and that the maximum sentence he potentially could be subject to is forty years;

(continued...)

-4-

At the sentencing hearing, the government presented three witnesses to prove the quantity of marijuana attributable to Morgan under U.S.S.G. § 1B1.3 for purposes of the court's setting the base level of the offense. The court also heard arguments on whether Morgan was entitled to the two-level reduction under U.S.S.G. § 5C1.2, which incorporates the safety valve statute, 18 U.S.C. § 3553(f), and a two-level departure for substantial assistance under U.S.S.G. § 5K1.1.

Daniel Merritt, questioned by both counsel and the court, testified that Morgan sold him approximately 130

---

[1](...continued)
(3) he must acknowledge his understanding that the court will make a determination of the quantity of marijuana for which he may be held legally accountable, and that his base offense level under the . . . Guidelines ("U.S.S.G.") will be determined by the quantity for which he is found to be legally responsible; and
(4) he must acknowledge his understanding that if the court determines the drug quantity for which the defendant is legally responsible is 100 kilograms or more, he could be subject to a five year mandatory minimum sentence unless U.S.S.G. § 5K1.1 (18 U.S.C. § 3553(e)) and/or U.S.S.G. § 5C1.2(a)(5) (18 U.S.C. § 3553(f)) are found by the court to be applicable, in which case the court in the exercise of its discretion could impose a sentence below the mandatory minium if the court deemed such a sentence to be appropriate under the guidelines.

pounds of marijuana, most of which he resold in small five to twenty pound quantities. He added, however, he sold to Daniel Scharn of Billerica, Massachusetts, the bulk of at least 100 pounds. Beverly Pryme, who also identified another source for the marijuana she sold Merritt, told the court Morgan provided 75 to 80 pounds of marijuana to Merritt. Finally, Patrol Sergeant Paul Poirier of the Merrimack Police Department described his investigation and surveillance that led to Pryme's arrest and told the court he believed Pryme "downplayed" the amount of marijuana attributable to Morgan. Based on the evidence and arguments of counsel, the court then stated:

> As we all know from experience, evidence concerning quantities is often comprised of estimates, estimates as to quantities, estimates as to the number of times deliveries are made, and estimates as to over what period of time those deliveries were made. Evidence concerning quantities depends also on memories, some of which are good and some of which are not so good. Therefore extrapolation is required when such evidence is received, and in my opinion the Court must be cautious when extrapolating.

Applying the standards of U.S.S.G. § 1B1.3 to all of the evidence "over the last few hours," the court found between 80 and 100 kilograms of marijuana were attributable to Morgan, resulting in a total offense level of 24.

Without elaboration, the court declined to give the

two-level reduction under the fifth element of U.S.S.G. §
5C1.2. It also rejected Morgan's motion under U.S.S.G. §
5K1.1. Morgan based his motion upon a presumption that the
plea agreement was revitalized when the court attributed
less than 100 kilograms of marijuana to him.[2]  Observing
that Morgan's truthfulness remained an issue throughout the
hearing and that the government's position was not taken in
bad faith, the court concluded it would not "in effect force
a 5K1 motion on the government."  Morgan challenges both
conclusions in this appeal as well as the court's refusal to
depart downward under U.S.S.G. § 5H1.6 in consideration of
his extraordinary family ties and responsibilities.

I.  Drug Quantity for Sentencing and Safety Valve Purposes

Morgan characterizes the court's finding between 80
to 100 kilograms attributable to his role in the conspiracy
as  "judicial confirmation" that he did not participate in
the "full 131.59 kilo conspiracy" and as proof of his
truthfulness for purposes of applying the safety valve and
substantial assistance reductions to his sentence.  We deal
with each contention in turn.

---

[2]The court adopted the presentence report's
recommendation for a 3-level decrease in Morgan's offense
level based on his acceptance of responsibility under
U.S.S.G. § 3E1.1.

## A. Drug Quantity

As oft-written, "[w]e review the sentencing court's factual findings, which must be supported by a preponderance of the evidence, for clear error." United States v. Lopez, 299 F.3d 84, 87 (1st Cir. 2002), citing United States v. Damon, 127 F.3d 139, 141 (1st Cir. 1997). That "preponderance," United States v. Marks, 365 F.3d 101, 105 (1st Cir. 2004), simply requires the government to present enough information, free from the strictures of the rules of evidence which do not apply to sentencing hearings, "provided that the information has sufficient indicia of reliability to support its probable accuracy," Lopez, 299 F.3d at 89; Fed. R. Evid. 1101(d)(3), to make it more likely than not that the fact to be proved is true. We then will "treat[] with deference" the district court's determination which we will reverse "only if, after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed." Lopez, 299 F.3d at 87 (citation omitted).

Despite Morgan's persistently conflating the inquiries on drug weight and the vindication of his truthfulness in testifying about his involvement in the conspiracy, we must untangle the two issues. While the testimony at the sentencing hearing established at most

approximately 135 pounds to be attributed to Morgan's participation in the conspiracy, the presentence report more fully documented additional quantities from recipients, particularly Scharn and Stanbury, whom, the government conceded, it perhaps "should have been more diligent" in calling to testify "to get over 100 kilos."[3] Nevertheless, the district court also had benefit of the background facts from the presentence report, which we, too, utilize in our review for clear error. See id. at 86, citing United States v. Brady, 168 F.3d 574, 576 (1st Cir. 1999). The pandect on sentencing and the standard of review we must follow require no more. Assessing the credibility of the witnesses against the background facts in the presentence report, the district court did not err in concluding Morgan was responsible for 80 to 100 kilograms of marijuana involved in the conspiracy, resulting in a base offense level of 24.

---

[3]Although underscoring the evidence Pryme and Merritt agreed not to disclose certain marijuana sales to Morgan and his extensive absence from the country to pursue his music career, these facts in the presentence report support the court's decision to attribute certain amounts of marijuana to Morgan in the first instance. That evidence does not cast doubt, however, on the ultimate quantity attributable to the conspiracy as a whole.

B.  Safety Valve and Substantial Assistance

On the "battleground" of the fifth element of 18 U.S.C. § 3553(f),[4] United States v. Matos, 328 F.3d 34, 38 (1st Cir. 2003), Morgan contends the district court failed to make its own independent determination of whether he met

_____

[4]18 U.S.C. § 3553(f) provides the five criteria to impose a sentence "without regard to any statutory minimum sentence":

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2 mirrors these requirements.

the only contested element of the safety valve provision, that he provide all information and evidence of the offense. That void in the court's determination cannot be filled with the government's generally subjective belief of his lack of candor, Morgan asserts.

We disagree. Although on its face the court's summary statement denying safety valve relief appears to provide scant satisfaction of the specific factual findings of which our precedent speaks,[5] Matos, 328 F.3d at 40, the full record of the sentencing hearing surely amplifies the conclusion. During several interchanges, the court commented on Morgan's lack of candor in downplaying his role in the conspiracy and in offering all of the information the government sought. Asking its own questions and listening to the witnesses' testimony as well as counsels' arguments involving credibility, the court then made the "*independent determination*" U.S.S.G. § 5C1.2 requires. United States v. White, 119 F.3d 70, 73 (1st Cir. 1997).

We review de novo interpretations of the safety valve provision under § 3553(f) and the guideline, U.S.S.G. § 5C1.2, while "[o]n the other hand, we review for clear error the factual findings relating to whether a defendant

---

[5]The court stated,"[t]he Court declines to give that two-point reduction on the grounds [] the requirements of the fifth prong under 5C1.2 have not been met."

has qualified for the 'safety valve' provisions." Id. at 73 n.6.  Under this standard, we cannot say the court erred in denying relief.

Indeed, the court's dissatisfaction with Morgan's candor surfaced again when it rejected Morgan's argument under § 5K1.1, stating that Morgan's truthfulness "has been an issue throughout this hearing."  Concluding no plea agreement was ever struck, the court properly gave effect to the government's decision not to request a downward departure for substantial assistance under U.S.S.G. § 5K1.1. Although Morgan here insists the government's plea agreement became effective upon the court's concluding he did not participate in the total amount of marijuana involved in the conspiracy, his argument is fatuous.  Assuming we have jurisdiction to entertain the question - a matter on which we take no view - the district court did not err in refusing to depart under U.S.S.G. § 5K1.1.

II.  Downward Departure.

Morgan contends the district court abused its discretion in failing to grant a downward departure to reflect the extraordinary family circumstances his incarceration and Pryme's imminent deportation would visit on his three children.  We lack jurisdiction to entertain this issue.

As we have enumerated in <u>United States</u> v. <u>Dewire</u>, 271 F.3d 333, 337 (1st Cir. 2001), a discretionary refusal to depart is not appealable if the district court correctly applied the guidelines, <u>see</u> <u>United States</u> v. <u>Saldana</u>, 109 F.3d 100, 102 (1st Cir. 1997); correctly applied the law, <u>see</u> <u>United States</u> v. <u>Lauzon</u>, 938 F.2d 326, 330 (1st Cir. 1991); and did not mistakenly believe it lacked the discretion to depart, <u>see</u> <u>United States</u> v. <u>Snyder</u>, 235 F.3d 42, 51 (1st Cir. 2000). Here, the court, recognizing the "unfortunate fact of life" that both parents may face imprisonment, expressly declined to depart under U.S.S.G. § 5H1.6. The issue, then, is not properly before us.

Thus, the district court did not err in determining the drug quantity attributable to Morgan, rejecting a departure for his substantial assistance, and refusing to apply a safety valve departure under 18 U.S.C. § 3553(f).

<u>III.  Post-Argument Claim.</u>

Following oral argument, Morgan submitted letters under Fed. R. App. P. 28(j) seeking additional review of his sentencing in light of <u>Blakely</u> v. <u>Washington</u>, ___ U.S. ___, 124 S. Ct. 2531 (2004). Our precedent forecloses this issue.

<u>Blakely</u> recently held that a Washington state court judge violated the sixth amendment right to a jury trial

-13-

when he sentenced a defendant who pled guilty to kidnaping to a far longer prison term than the standard statutory maximum for this offense, based on the judge's own finding of the statutory aggravated circumstance that the defendant acted with "deliberate cruelty." This fact was "neither admitted by [the defendant] nor found by a jury." Id. at 2537. Blakely could potentially affect the trial court's sentence in the present case, which was based partially on its own finding holding Morgan responsible for between 80 and 100 kilograms of marijuana as the amount that he could reasonably foresee within the scope of the criminal operation. Blakely raises the possibility that this fact should not have been decided by the judge, but instead needed to have been determined by a jury or admitted by the defendant.

Morgan never raised this Blakely issue at the trial court, in his original briefs to this court, or in oral argument. Instead, he presented the issue to this court for this first time after oral argument.

When an argument has been waived, no review is possible, unless the court engages in the rare exercise of its power to excuse waiver. But when an argument has merely been forfeited, plain error review may be available. See United States v. Mitchell, 807 F.3d 800, 807 (1st Cir.

-14-

1996).  Waiver is the intentional relinquishment or abandonment of a right; forfeiture is generally defined as the mere failure to raise an issue in a timely manner.  See United States v. Olano, 505 U.S. 725, 733 (1993); United States v. Rodriguez, 311 F.3d 433, 437 (1st Cir. 2002).

The question now is whether plain error review is available in this situation.  When a party merely fails to raise an issue in proceedings below but does raise the issue on appeal, we will still review that issue for plain error.  See, e.g., United States v. Thurston, 358 F.3d 51, 63 (1st Cir. 2004); United States v. Matos, 328 F.3d 34, 43 (1st Cir. 2003).  But this case is a bit different; Morgan neither raised the issue below nor initially in this court.  The normal rule is that new issues cannot be raised at all in a rule 28(j) filing, see United States v. Nason, 9 F.3d 155, 163 (1st Cir. 1993).  A more difficult question is whether such a rule is appropriate where a party is raising a new issue in response to a potentially crucial Supreme Court decision that issued only after briefing and oral argument were completed.  After Apprendi was issued, several defendants filed rule 28(j) letters with this court: we agreed to consider the Apprendi issue, but only on plain error review.  See United States v. Baltas, 236 F.3d 27, 41- 42 (1st Cir. 2001); United States v. LaFreniere, 236 F.3d

41, 48-50 (1st Cir. 2001).

We need not definitively resolve whether plain error review would be available in this case, because even assuming arguendo that it is, Morgan's Blakely argument could not prevail using such a standard.

In the post-Apprendi world, this court adopted a rule that any such error in sentencing should be held harmless so long as the evidence for the trial judge's factual findings is overwhelming and no reasonable jury could have disagreed with them. See Sustache-Rivera v. United States, 221 F.3d 8, 18-19 (1st Cir. 2000). This rule does not apply to the present case. The judge's determination was surely reasonable, but given the convoluted state of the evidence presented at the sentencing hearing, we cannot say the court's findings were compelled by the evidence.

Plain error review is extremely deferential; errors will be corrected only if "(1) . . . an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001); see Olano, 505 U.S. at 732-37. Under existing (post-Apprendi, pre-Blakely) First Circuit precedent, the

judge is empowered in a conspiracy case to determine the exact amount of drugs that a defendant reasonably foresaw, so long as his sentence is no greater than that which could be imposed based on the total quantity of drugs that the jury had found for the conspiracy as a whole.  See Derman, 298 F.3d 34, 42-43.  Because the trial judge acted in accordance with circuit precedent, we cannot say plain error occurred, and we need not proceed further.

**Affirmed**.