**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
# For the First Circuit

No. 08-2433

UNITED STATES OF AMERICA,

Appellee,

v.

AMADO DE LA ROSA-RAMOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Selya, Lipez and Howard, Circuit Judges.

Linda Backiel on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, on brief for appellee.

February 17, 2010

**Per Curiam**.  Defendant-appellant Amado De La Rosa-Ramos pleaded guilty to charges involving his attempted illegal reentry into the United States.  The district court sentenced him to two concurrent 51-month terms of immurement.  On appeal, he challenges his sentence.  We direct a slight modification in the sentence but otherwise affirm.

The facts, which we glean from the plea colloquy, the presentence investigation report (PSI Report), and the transcript of the disposition hearing, are uncomplicated.  On March 25, 2008, Puerto Rico maritime police called the U.S. Border Patrol to a locus roughly 200 yards off the coast of Parque de Colón.  Upon arrival, the border patrol agents observed a number of persons jumping from a detained vessel into the surrounding waters.  The agents apprehended the defendant and thirteen other individuals.

In due course, a federal grand jury handed up a two-count indictment against four persons.  The indictment charged the defendant with plotting to effect his own illegal entry and aiding and abetting the illegal entry of others, in violation of 8 U.S.C. § 1325(a)(1) (count 1), and attempted reentry into the United States without proper authorization after having been deported following the commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a)(2), (b)(2) (count 2).  The defendant entered a straight guilty plea to both counts.

A probation officer proceeded to prepare the PSI Report. Using the November 2007 edition of the guidelines manual, she grouped the counts of conviction because they arose out of the same plan, scheme, or course of conduct. See USSG §3D1.2(b). Inasmuch as count 2 carried the higher total offense level — 21 — the probation officer used it to calculate the guideline sentencing range (GSR).[1] See id. §3D1.3(a).

To complete this calculation, the probation officer needed to determine the defendant's criminal history category (CHC). Because certain details of the defendant's criminal record are pertinent to an issue on appeal, we note the relevant particulars.

The first conviction with which we are concerned led to sentencing by a local Puerto Rico court on November 27, 1995. The charges were for aggravated assault and related weapons violations. The Puerto Rico court imposed a two-year prison sentence. The PSI Report assigned three criminal history points in respect to this sentence. See id. §4A1.1(a). Following service of this sentence, the government deported the defendant.[2]

---

[1] This total offense level resulted from a base offense level of 8, see USSG §2L1.2, plus 16 levels because the defendant's earlier deportation followed his conviction for a crime of violence, see id. §2L1.2(b)(1)(A)(ii), less 3 levels for acceptance of responsibility, see id. §3E1.1.

[2] At sentencing in the instant case, the parties disagreed about the date of deportation. We need not resolve this dispute as the exact date is immaterial to the issues presented on appeal.

The defendant's other brushes with the law arose out of activities that led to his arrest by the Coast Guard on or about October 25, 2003. This arrest followed the Coast Guard's seizure of a wooden yawl off the coast of San Juan. Federal authorities detained several persons (including the defendant). They subsequently charged the defendant with illegal reentry into the United States after having been deported for commission of an aggravated felony. See 8 U.S.C. § 1326(b)(2).

The defendant entered a guilty plea on July 20, 2004, and a federal judge sentenced him to 41 months in prison (subsequently reduced to 30 months) and three years of supervised release. The PSI Report assigned three criminal history points to this sentence. See USSG §4A1.1(a).

On March 24, 2004, the defendant (along with other persons arrested on October 25, 2003) was charged with smuggling and harboring illegal aliens. As part of a plea bargain, the government later dropped these charges and, instead, filed an information that charged the defendant with misprision of a felony. See 18 U.S.C. § 4. On June 9, 2005, the defendant entered a guilty plea to this charge. The court sentenced him the same day to twelve months and one day in prison, to run concurrently with the unserved portion of his 41-month sentence (described above). The PSI Report assigned three criminal history points to this sentence.

See USSG §4A1.1.  After his release, the government again deported the defendant.

In addition to the foregoing, the PSI Report assigned two points because the defendant committed the offenses of conviction (that is, the offenses underlying this appeal) while serving a term of supervised release.  See id. §4A1.1(d).

In the aggregate, these allocations produced a total of eleven criminal history points, which placed the defendant in CHC V.  See id. Ch. 5, Pt. A (sentencing table).  As a further data point, the PSI Report noted that the statutory maximum sentences for the offenses of conviction were two years for count 1 and twenty years for count 2.

Neither side filed objections to the PSI Report.  See D.P.R.R. 132(b)(3).  At the disposition hearing, however, the defendant disputed certain dates, see, e.g., supra note 2, and sought to "clarify" his prior convictions.  Despite this clarification, the sentencing court ruled that the prior convictions were appropriately scored in the PSI Report.  Then, the court cited a variety of mitigating factors and adjusted the defendant's total offense level downward by three levels (to 18). Accepting all the other recommendations contained in the PSI Report and retaining the defendant's classification in CHC V, the court computed the GSR at 51-63 months.  The government recommended a sentence at the low end of the GSR.  The court obliged, sentencing

the defendant to two concurrent 51-month terms of imprisonment. This timely appeal followed.

Before us, the defendant advances two claims of error. First, he argues that his sentence on count 1 exceeds the statutory maximum. Second, he argues that the court below erred in determining his CHC. Since his second claim requires more analysis, we start there.

The defendant's challenge to his CHC comprises an attack on two of the district court's intermediate calculations. Because no part of this attack was adumbrated in the district court, the government asserts that the defendant has waived these claims of error. For his part, the appellant concedes that these claims are unpreserved — he is raising them for the first time on appeal — but says that they are forfeited, not waived.

The characterization question is not free from doubt. See, e.g., United States v. Turbides-Leonardo, 468 F.3d 34, 38 (1st Cir. 2006) (suggesting, on analogous facts, that claims of sentencing error were waived). A party waives a right when he intentionally relinquishes or abandons it. United States v. Olano, 507 U.S. 725, 733 (1993); United States v. Eisom, 585 F.3d 552, 556 (1st Cir. 2009). In contrast, a party who merely fails to make a timely assertion of a right forfeits that right, but does not waive it. United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002). The distinction is consequential from the standpoint of possible

appellate review; "a waived issue ordinarily cannot be resurrected on appeal, whereas a forfeited issue may be reviewed for plain error." Id. (citations omitted).

It is not necessary for us to decide this characterization question here. The merits of the claims in question are easily dispatched, so it is unnecessary for us to address the waiver issue head-on. Therefore, we assume, favorably to the defendant, that what transpired here was simply a forfeiture. This means, of course, that we may review the claims, but only for plain error. Under that standard, the defendant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

The defendant assigns error to the lower court's compilation of his criminal history score. The nub of his complaint is that the court counted the two sentences arising out of the October 2003 incident separately. In his view, the underlying charges were "related cases" and, thus, should have been treated as a single unit (carrying fewer criminal history points).

This argument fails. Without objection, both the probation officer and the district court used the November 2007 edition of the guidelines for all purposes relevant to sentencing.

Even on appeal, no one has suggested that some other edition of the guidelines should have been employed.

In all events, the November 2007 edition of the guidelines plainly applies here. Unless doing so would cause an ex post facto problem, a sentencing court should use the version of the guidelines in effect on the date of sentencing. See 18 U.S.C. § 3553(a)(4)(A)(ii); USSG §1B1.11(a); United States v. Silva, 554 F.3d 13, 22 (1st Cir. 2009); United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990). The district court sentenced the defendant on September 26, 2008, for offenses that arose out of events that occurred on March 25, 2008. The November 2007 edition of the guidelines was in force on both dates. A fortiori, using that version of the guidelines did not pose an ex post facto problem.

These guidelines instruct that when multiple prior sentences are in play, separate sentences sometimes may be counted as a unit for the purpose of calculating a defendant's criminal history score. See USSG §4A1.2(a). But in that regard, the guidelines make no reference to a "related cases" standard. Instead, they provide in pertinent part that:

> . . . prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

USSG §4A1.2(a)(2). Under this standard, whether or not the prior convictions are "related" is irrelevant.[3]

In this case, the record makes manifest that the challenged convictions were not for offenses described in the same charging document, nor were the sentences for them imposed on the same day. Thus, the district court correctly counted the two convictions as separate offenses for the purpose of tabulating the defendant's criminal history score.

The defendant has a fallback position. He argues that the district court blundered by awarding three criminal history points for the misprision of felony sentence and that, therefore, the sentence on count 2 must be vacated. His premise is correct, but the conclusion that he reaches is not.

The district court erred in assigning three criminal history points to this sentence. The sentence for the misprision of felony conviction was for one year and one day. Thus, only two points should have been assigned for that sentence. See USSG §4A1.1(a) (requiring three criminal history points be added for sentences "exceeding one year and one month"); id. §4A1.1(b)

---

[3] A "related cases" provision was contained in the immediately preceding edition of the guidelines: whether convictions were counted separately turned, in some circumstances, on whether the cases were "related." See USSG §4A1.2 (2006). But this provision was deleted in 2007, see USSG Supp. to App. C, amend. 709 (2007), and it has no bearing here.

(requiring two criminal history points be added for sentences of at least 60 days).

Although the defendant is correct in insisting that the court should have assigned two, not three, criminal history points for this sentence, the error was harmless. Subtracting one criminal history point would not have shifted the defendant into a different CHC and, thus, would not have changed the GSR. Consequently, the counting error did not impugn the defendant's substantial rights. See Fed. R. Crim. P. 52(a); United States v. Jimenez, 512 F.3d 1, 8 (1st Cir. 2007). It follows that this claim cannot survive scrutiny under the third prong of the test for plain error. The sentence imposed on count 2 must stand.

This leaves the defendant's sentence on count 1. He maintains that this sentence exceeds the statutory maximum. We agree.

The facts are these. With respect to count 1, the defendant pleaded guilty to violating 8 U.S.C. § 1325. The district court sentenced him to 51 months' imprisonment. The conviction, however, is for a first offense and, thus, is subject to a six-month maximum term of imprisonment.[4] See 8 U.S.C. § 1325(a). Thus, the sentence imposed on count 1 was in excess of the statutory maximum. We deem that error plain, and find the

_____

[4] Although the PSI Report described the maximum term of imprisonment as two years for the section 1325 offense, that maximum is only available for a subsequent section 1325 conviction.

remaining elements of the plain error test satisfied.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Hilario-Hilario</u>, 529 F.3d 65, 76 (1st Cir. 2008).

This does not mean, however, that resentencing is required.  The reduction of a sentence to conform to a statutory maximum ordinarily may be accomplished without a new sentencing hearing.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Barnes</u>, 244 F.3d 172, 178 (1st Cir. 2001).  In this case, an instruction to the sentencing court is all that is needed to repair the defect.

We need go no further.  For the reasons elucidated above, we uphold the sentence on count 2.  However, we remand count 1, with directions to the district court to amend that sentence to a sentence of six months' imprisonment, to run concurrently with the sentence imposed on count 2.  As amended, the sentence on count 1 is also affirmed.

**So Ordered**.