# United States Court of Appeals
## For the First Circuit

No. 02-2419

UNITED STATES,

Appellee,

v.

CARLOS MARTINEZ-BERMUDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Lipez, and Howard, Circuit Judges.

Colleen E. Carafotes for appellant.
    H.S. Garcia, United States Attorney, Nelson Pérez-Sosa and
Sonia I. Torres-Pabón, Assistant United States Attorneys, for
appellees.

November 1, 2004

**LIPEZ**, **Circuit Judge**. Appellant Carlos Martinez-Bermudez participated in a carjacking, recklessly drove the stolen vehicle against traffic on a crowded street, and eventually struck and killed a police officer. After being charged in a three-count indictment, he pled guilty to one count of aiding and abetting an armed carjacking that resulted in death in violation of 18 U.S.C. § 2119(3). The district court sentenced him to life imprisonment. He now appeals his sentence, arguing that the district court misapplied several provisions of the United States Sentencing Guidelines. We affirm.

## I.

Because appellant was sentenced following a guilty plea, "[w]e distill the facts from the plea colloquy, the undisputed portions of the presentence investigation report . . . and the transcript of the disposition hearing." United States v. Brewster, 127 F.3d 22, 24 (1st Cir. 1997). We summarize the facts in this section and recount additional facts in subsequent sections where appropriate.

On June 26, 2001, at about 1 p.m., Miguel Comas-Horta was driving past the service window of a Wendy's restaurant in Mayagüez, Puerto Rico. Three men -- Wilber Heredia-Rivera (Heredia), David Nuñez-Pérez (Nuñez), and appellant Carlos Martinez-Bermudez (Martinez) -- approached Comas-Horta's car. Heredia forced Comas-Horta at gunpoint to surrender his vehicle,

-2-

and Martinez ordered him to throw himself on the ground. The three assailants then drove off at a high rate of speed. The police were soon informed of the crime and received a description of the stolen car.

At about 1:45 p.m., a Commonwealth motorcycle police officer saw the car driving on Comercio Street in downtown Mayagüez and followed it. The three assailants noticed the officer pursuing them and, with Martinez at the wheel, attempted to escape. During the pursuit, Nuñez threw two guns out the window of the car, one of which was later recovered by the Commonwealth police.

Two additional Commonwealth officers -- Maria L. Colón-Ramos and William Camacho-Rivera -- joined the pursuit in a patrol car. They made a u-turn on Comercio Street and stopped their vehicle. Officer Camacho-Rivera exited the patrol car and began to stop oncoming traffic. Martinez drove the stolen vehicle approximately sixty miles per hour down the wrong side of Comercio Street -- that is, against the flow of traffic -- and toward Officer Camacho-Rivera. Although Martinez had sufficient time to stop or change the direction of his vehicle, he did not do so. Instead, he struck and killed Officer Camacho-Rivera, then lost control of the car and struck two civilian vehicles before the stolen car finally came to a stop. Martinez, Nuñez, and Heredia were apprehended shortly thereafter.

On July 24, 2001, a grand jury handed down a three-count indictment against Martinez. At his arraignment in August 2001, Martinez pled not guilty to all three counts. In April 2002, however, he agreed to plead guilty to Count One: aiding and abetting the taking of a vehicle by force, which resulted in the death of Officer Camacho-Rivera.[1] In exchange for his guilty plea on Count One, the government agreed to request dismissal of Counts Two and Three.[2] The parties did not enter into any agreement regarding the application of the Sentencing Guidelines, except that the government agreed to support a three-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.[3]

---

[1]Count One was charged pursuant to 18 U.S.C. § 2119, which states in relevant part:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall . . . (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

[2]Count Two charged Martinez with aiding an abetting the use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Count Three charged Martinez with aiding and abetting the possession of a firearm by a convicted criminal in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

[3]All references to the United States Sentencing Guidelines are to the November 2001 version, which was in effect at the time of Martinez's sentencing. See United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990) ("Barring any ex post facto problem, a defendant is to be punished according to the guidelines in effect

The presence report recommended, pursuant to U.S.S.G. § 2B3.1(c) (the robbery cross-reference to the first degree murder guideline), that Martinez receive a base offense level of forty-three. It also recommended the following adjustments: (1) a three-level upward adjustment pursuant to § 3A1.2 because the victim was a government officer; (2) a two-level upward adjustment pursuant to § 3C1.2 for reckless endangerment during flight from a law enforcement officer; (3) a two-level upward adjustment pursuant to § 3C1.1 for obstruction of justice; and (4) a three-level downward adjustment pursuant to § 3E1.1 for acceptance of responsibility. The adjustments resulted in a total offense level of forty-seven. At the sentencing hearing on September 30, 2001, the district court adopted the recommendations in the presence report and applied a total offense level of forty-seven. Under the Guidelines' sentencing table, that total offense level requires a punishment of life imprisonment. See U.S.S.G. Ch. 5 Pt. A.

**III.**

On appeal, Martinez argues that the district court misapplied the Guidelines as a matter of law.[4] First, he argues that the district court improperly applied a base offense level of forty-three. Second, he contends that the district court's

---

at the time of sentencing."); U.S.S.G. § 1B1.11(a).

[4]He does not challenge the factual findings that underlie the district court's application of the Guidelines.

imposition of both an upward adjustment for obstruction of justice and a downward adjustment for acceptance of responsibility is inconsistent. Finally, he argues that the district court engaged in impermissible double counting by imposing both an upward adjustment because the victim was a government officer and an upward adjustment for reckless endangerment during flight from law enforcement. We review de novo the district court's legal interpretation of the Guidelines. See United States v. Talladino, 38 F.3d 1255, 1263 (1st Cir. 1994).

## A.        The Base Offense Level

U.S.S.G. § 2B3.1(c) provides that, in the case of a robbery:

> If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder).

This section, which explicitly applies to robbery, also applies to carjacking. See United States v. Lebrón-Cepeda, 324 F.3d 52, 61 (1st Cir. 2003) (per curiam), cert. denied sub nom. Caraballo-Gonzalez v. United States, 124 S. Ct. 232 (2003). 18 U.S.C. § 1111 provides in relevant part: "Murder is the unlawful killing of a human being with malice aforethought. Every murder . . . committed in the perpetration of . . . robbery . . . is murder in the first degree." Finally, U.S.S.G. § 2A1.1 mandates a base offense level of forty-three for first degree murder.

-6-

Martinez argues that § 2B3.1(c) is inapplicable in this case because Martinez did not kill Officer Camacho-Rivera "in the perpetration of . . . robbery," but rather during his flight from pursuing authorities. This argument is unavailing. In interpreting 18 U.S.C. § 2119(2), the carjacking statute that applies when serious bodily injury "results," we have noted that "Congress intended to cover a fairly broad range of consequences flowing from a carjacking," and concluded that "the injuries covered . . . include those caused by the carjacker at any point during his or her retention of the vehicle." United States v. Vazquez-Rivera, 135 F.3d 172, 178 (1st Cir. 1998). Applying this principle to § 2119(3), which is parallel to § 2119(2) in all pertinent respects, a death "results" from a carjacking if that death was caused "at any point during [the carjacker's] retention of the vehicle." Therefore, the conduct to which Martinez admitted in his plea satisfied the elements of § 2119(3).

However, the fact that § 2119(3) covers a death incurred during flight does not end our inquiry for sentencing purposes. The offense guideline for § 2119 is U.S.S.G. § 2B3.1 (robbery), and the offense level must be calculated under that guideline. The cross-reference to § 2A1.1 (first degree murder) applies only if the requirements of 18 U.S.C. § 1111 (murder) are met.[5] While it

---

[5]The intent element of § 1111(a) is satisfied automatically in the case of felony murder. United States v. Shea, 211 F.3d 658, 674 (1st Cir. 2000). Thus, the only real dispute is whether the

may seem intuitive that a death that "results" from a carjacking is also committed "in perpetration of" the carjacking, the analyses are formally distinct because they depend on interpretation of different statutes. Moreover, it is possible that a death might meet the standard of "result[ing]" from a carjacking while not the potentially higher standard of being committed "in perpetration of" that carjacking.

We have held repeatedly that "the law of this circuit is that the commission of a carjacking continues at least while the carjacker maintains control over the victim and [his or] her car." Lebrón-Cepeda, 324 F.3d at 61 (alteration in original) (internal quotation marks omitted); Ramirez-Burgos v. United States, 313 F.3d 23, 30 n.9 (1st Cir. 2002), cert. denied, 537 U.S. 1167 (2003); Vazquez-Rivera, 135 F.3d at 178. But those cases all involved injury to the victim of the carjacking itself, not to third parties. Indeed, the exact language of Ramirez-Burgos and Lebrón-Cepeda is that "the commission of a carjacking continues at least while the carjacker maintains control over the victim and her car." In this case, Martinez had relinquished control over Comas-Horta (the carjacking victim) some forty-five minutes before the police chase began, let alone the fatal crash.[6]

_____

death occurred "in perpetration of" the carjacking.

[6]Martinez has not argued that § 2B3.1(c) should not apply because, when he struck Officer Camacho-Rivera, Martinez no longer

-8-

The problem of applying the felony murder doctrine to a death caused, not to the victim of the predicate robbery during its course, but to someone else during subsequent flight, has arisen in state law more often than under § 1111. For example, in People v. Kendrick, 363 P.2d 13, 16 (Cal. 1961), the defendant robbed a store and drove away, unpursued, at about seventy miles per hour. Some time (perhaps as much as forty-five minutes) later he was stopped by a traffic officer. The defendant mistakenly believed the officer intended to arrest him for the robbery, and shot the officer. Id. at 16, 23. The California court concluded that "the homicide could properly be viewed as committed by defendant in an endeavor to effect an escape." Id. at 23. This conclusion followed from the nature of robbery as a crime that inherently involves flight:

> Robbery, unlike burglary, is not confined to a fixed locus, but is frequently spread over considerable distance and varying periods of time. The escape of the robbers with the loot, by means of arms, necessarily is as

---

had control over the original victim of the carjacking. We note that the rationale behind Lebrón-Cepeda and Ramirez-Burgos seems to incorporate an element of kidnapping. Furthermore, our statement in Vazquez-Rivera that the injuries covered under § 2119 "include those caused by the carjacker at any point during his or her retention of the vehicle" must have some logical limit. If the carjacking is so successful that the defendant completely evades capture and simply retains the vehicle for his own use, it cannot be the case that any subsequent traffic accident, after any interval of time whatsoever, is part of the carjacking. Because these issues are not fully presented here, however, we decline to comment on the theoretical outer boundaries of a carjacking after the victim has been released.

-9-

important to the execution of the plan as gaining possession of the property.

Id. (quoting People v. Boss, 290 P. 881, 883 (Cal. 1930)).  The robbery continues, under this rationale, "until the robber has won his way to a place of temporary safety."  People v. Fierro, 821 P.2d 1302, 1326 (Cal. 1991) (internal quotation marks omitted).  We have approved this "temporary safety" formulation in the context of the federal crime of escape.  See United States v. DeStefano, 59 F.3d 1, 4 & n.5 (1st Cir. 1995) (quoting Fierro).

Carjacking, being a species of robbery, follows the same general analysis: flight with the vehicle is inherent to the crime.[7]  There might be situations in which a carjacker made off with a vehicle, reached a point of temporary safety, and only later was pursued by police.  In such cases the flight might no longer be part of the "perpetration" of the carjacking.  Here, however, we are satisfied that the district court committed no error in concluding that the carjacking was still in progress when the death occurred.  Martinez struck Officer Camacho-Rivera less than an hour after initiating the carjacking and while he still retained control over the stolen vehicle.  The record contains no evidence of an

---

[7]Technically, one could be guilty of violating § 2119 simply by "tak[ing] a motor vehicle . . . from the person or presence of another by force and violence or by intimidation," without actually driving it anywhere.  But that is true of robbery in general.  By stating that escape is inherent to carjacking we do not mean that it is an element that must be proven, but simply that, when it does occur, it is part of the "perpetration" of the crime.

intervening action or event indicating that the carjacking had ended prior to his striking the officer. Rather, the facts to which Martinez admitted support the district court's inference that Martinez was still engaged in the continuing process of stealing and disposing of the car when he spotted the police following him, tried to evade pursuit, and eventually killed Officer Camacho-Rivera. Put briefly, the facts support the inference that the death occurred "in the perpetration of" the carjacking.

Because Martinez struck Officer Camacho-Rivera "in the perpetration of" the carjacking, the district court correctly applied a base offense level of forty-three pursuant to § 2B3.1(c).

B.        **Upward Adjustments**

Martinez challenges both the two-level upward adjustment pursuant to § 3C1.2 for reckless endangerment during flight from a law enforcement officer and the two-level upward adjustment under § 3C1.1 for obstruction of justice.[8]

---

[8]Martinez does not contest the three-level upward adjustment under § 3A1.2 for striking a government officer, but contends that the further application of § 3C1.2 constitutes impermissible "double counting" because both adjustments resulted from the same act: recklessly driving the stolen vehicle in an effort to evade capture. See U.S.S.G. § 3C1.2, cmt. n.1 ("Do not apply this enhancement where . . . another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct.").

His challenge to the adjustment for obstruction of justice under § 3C1.1 is based on its alleged incompatibility with the downward adjustment under § 3E1.1 for acceptance of responsibility. See U.S.S.G. § 3E1.1, cmt. n.4 (upward adjustment for obstruction of justice under § 3C1.1 can coexist with a downward adjustment under § 3E1.1 only in "extraordinary" circumstances).

We need not resolve these issues. We have concluded that the district court correctly calculated a base offense level of forty-three, and the uncontested adjustments, including the only downward adjustment at issue, balance each other perfectly. That is, neither Martinez nor the government challenge either the three-level upward adjustment for death of a government officer under § 3A1.2, or the three-level downward adjustment for acceptance of responsibility under § 3E1.1. Consequently, even if the district court had applied only the uncontested adjustments -- or, put differently, even if we found that application of the contested adjustments was erroneous -- the total offense level would be forty-three. Such a change would not affect Martinez's sentence because all offense levels of forty-three or above mandate a life sentence. See U.S.S.G. Ch. 5 Pt. A & cmt. n.2 (mandating life sentence for offense level of forty-three, and treating all higher offense levels as equivalent to level forty-three).

We do not "address an allegedly erroneous sentencing computation if . . . correcting it will neither change the defendant's sentence nor relieve him from some unfair collateral consequence." United States v. Saccoccia, 58 F.3d 754, 790-91 (1st Cir. 1995) (refusing to determine whether the district court erroneously imposed an upward adjustment for obstruction of justice because "correction of [that] allegedly erroneous finding would not eliminate the certainty of a mandatory sentence of life

-12-

imprisonment").  Therefore, we decline to pass on the propriety of the contested upward adjustments.[9]

**AFFIRMED.**

---

[9]Briefing was completed in this appeal before the Supreme Court decided <u>Blakely</u> v. <u>Washington</u>, 124 S. Ct. 2531 (2004). However, in the months that have followed, Martinez has not sought to raise a <u>Blakely</u> challenge via Fed. R. App. P. 28(j) or otherwise, so we need not decide how <u>Blakely</u> might affect this case.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Garcia-Morales</u>, 382 F.3d 12, 19 n.3 (1st Cir. 2004) (declining to address <u>Blakely</u> because appellant did not raise the issue).  Even if we addressed the issue <u>sua sponte</u>, our review would be for plain error.  <u>See</u> <u>United States</u> v. <u>Morgan</u>, 384 F.3d 1, 2004 U.S. App. LEXIS 18739, *15-16 (1st Cir. 2004).  As in <u>Morgan</u>, "[b]ecause the trial judge acted in accordance with circuit precedent (not yet clearly established to be erroneous), we cannot say plain error occurred, and we need not proceed further."  <u>Id.</u> at *18.