# United States Court of Appeals
## For the First Circuit

No. 06-1923

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ A. GARCÍA-ORTIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Circuit Judge,
John R. Gibson,[*] Senior Circuit Judge,
and Lipez, Circuit Judge.

Mark Diamond, for appellant.
Vernon B. Miles, Assistant United States Attorney, with whom
German A. Rieckehoff, Assistant United States Attorney, Rosa Emilia
Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa,
Assistant United States Attorney, Chief, Appellate Division, were
on brief for appellee.

June 10, 2008

[*]  Of the Eighth Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** José A. García-Ortiz ("García") was convicted of intentionally obstructing and delaying commerce by robbery, armed robbery, and first degree murder under 18 U.S.C. §§ 2, 1951(b), 924(c)(1), and 924(j). The jury found him guilty on all three counts. García was sentenced to life imprisonment for aiding and abetting and first degree murder and an additional ten years' imprisonment for attempted murder. García challenges his conviction on numerous grounds and challenges the length of his sentence as to Count One for intentional obstruction of commerce by robbery. After careful consideration, we affirm García's conviction but vacate and remand to the district court for resentencing as to Count One.

## I. Background[1]

At approximately 11:30 a.m. on December 9, 2000, Rafael Rivera-Aguayo ("Rivera"), a security guard for Ralph's Food Warehouse ("RFW"), escorted RFW's manager, Edgardo Figueroa-Rosa ("Figueroa"), to his car. They were going to the bank to deposit $63,000 in cash from the previous day's sales. As the two men exited the supermarket and walked toward the car, Figueroa noticed a green four-door car -- later identified as a Dodge Intrepid -- which he found suspicious because of the way it was parked. Figueroa opened the door of his car for Rivera to get in, and he

---

[1] We recite the facts in the light more favorable to the jury's verdict, consistent with record support. See United States v. Colón Díaz, 521 F.3d 29, 32 (1st Cir. 2008).

walked around the back of the car to get in on the driver's side. Before he was fully seated, Figueroa saw two people running towards the car through his rear-view mirror. One of them grabbed Rivera and a struggle ensued. During the struggle Figueroa heard a gunshot, and he got down on the ground. After hearing gunshots, Rivera returned fire and killed one of the assailants, Reinaldo Rolón Rivera ("Rolón). Rivera saw a person with white tennis shoes walk around the back of the car. Figueroa remained on the ground, and he saw someone running towards his car wearing a white shirt and jeans. The person ran towards Figueroa as he heard voices from the Intrepid yelling "kill him." The assailant took the bag of money from Figueroa who kept his eyes and hands on the ground and begged for mercy. Figueroa heard two more shots and then the Intrepid sped away. Rivera was wounded and in a state of shock.

Two RFW employees saw the assailants' silhouettes, but did not see their faces. They saw someone jump out of the car, take the money, and then get back in the car and speed away. The employees identified one of the assailants as wearing blue jeans and a blue t-shirt with white stripes. Another witness saw the assailants, but he could only provide vague descriptions of them. The police recovered a .357 Magnum, short-barrel revolver at the scene of the crime and took it as evidence. The Intrepid, reported stolen by its owner in November 2000, was later recovered only five minutes away from RFW. One of its side windows had a bullet hole

in it, the back window was completely broken, the back seat bore a blood stain, and there were shell casings in the car. According to forensic analysis, a total of three guns were fired during the robbery. The police collected copious amounts of forensic evidence from the Intrepid.

During its investigation, the FBI came to believe that García may have been involved in the robbery. García had been photographed with the deceased assailant at a mechanic shop that had been under surveillance prior to the RFW robbery. The owner of the shop was suspected of being part of an organization involved in armed robberies.

García, along with others, was subpoenaed to the FBI office in San Juan to provide blood, hair, saliva, and fingerprint samples. He went to the FBI office, accompanied by counsel, and during a consensual body search, the FBI discovered what looked like a bullet wound. García's wound was later x-rayed, and the FBI found metallic residue consistent with such a wound.[2] DNA evidence performed at the FBI lab confirmed that DNA in the Intrepid matched García's DNA and excluded all other suspects. García produced an alibi witness, Magda Ballester, who said that she saw him at about 2:00 p.m. on the day of the robbery at his home working on a cement

_____

[2] The Government filed a motion to remove the bullet from García, but a magistrate judge denied the motion, holding that under Winston v. Lee, 470 U.S. 753 (1985), the proposed surgical procedure posed health risks to the defendant. See United States v. García-Ortiz, 261 F. Supp. 2d 56, 61 (D.P.R. 2003).

-4-

wall. She testified that he was there until 5:00 p.m. and that García never told her that he was wounded. Ballester's testimony was contradicted by an FBI agent who said that when he first interviewed her, she did not mention anything about García working on a cement wall and that the first time she saw him that day was when he was at his grandmother's house that evening.

At the time of the robbery, RFW consisted of four supermarkets in Puerto Rico; the chain sold products it bought from vendors in Florida and Georgia, among other places. RFW's business with continental United States vendors was estimated in the several millions of dollars.

García was charged on February 28, 2000. He was indicted on March 15, 2001, with a superseding indictment on September 3, 2003. Count One charged him with intentional obstruction of commerce by robbery under 18 U.S.C. §§ 2[3] and 1951(a);[4] Count Two

---

[3] 18 U.S.C. § 2 reads:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

[4] 18 U.S.C. § 1951(a) reads:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in

charged him with unlawfully carrying a firearm during a crime of violence interfering with interstate commerce under 18 U.S.C. §§ 2 and 924(c)(1)(A);[5] and Count Three charged him with murder under 18 U.S.C. §§ 2 and 924(j).[6] On August 13, 2004, García was convicted on all three counts. He was sentenced on May 10, 2006 to life imprisonment on Counts One and Three, with the sentences to run concurrently; he was sentenced to ten years' imprisonment as to

---

violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

[5] 18 U.S.C. § 924(c)(1)(A) reads:

Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime: (i) be sentenced to a term of imprisonment of not less than 5 years; (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

[6] 18 U.S.C. § 924(j) reads:

A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall: (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life; and (2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

Count Two, with the sentence to run consecutively to Counts One and Three.  García appeals his conviction and his sentences.

## II.  Discussion

García makes numerous arguments challenging his conviction and sentence.  With the exception of García's challenge to his sentence for Count One, we are unconvinced by his arguments. After outlining the applicable standard of review, we take each claim in turn.

### A.  Bolstering

We review a trial court's evidentiary rulings for an abuse of discretion.  See United States v. Rivera-Hernández, 497 F.3d 71, 82 (1st Cir. 2007) (citing United States v. Lara, 181 F.3d 183, 195 (1st Cir. 1999)).

García argues that the district court allowed impermissible speculation and bolstering by FBI Agent Allen Gómez. Before trial, Rivera was shown a picture of García, but incorrectly identified another man.  At trial, the Government asked Gómez if anybody in the courtroom resembled the person that Rivera identified.  García objected, arguing that the question called for conjecture and speculation in an attempt to bolster Rivera's out-of-court misidentification.  The judge overruled the objection, and Gómez testified that García resembled a photo of a man Rivera identified.

García argues that Gómez's speculation was inadmissible and prejudicial because it was (1) speculation by a lay witness on an issue not beyond the jury's purview; (2) an improper attempt to get Gómez to bolster the testimony of Rivera; and (3) an improper attempt to turn Rivera's non-identification into a positive identification because of Gómez's perceived high status as a law enforcement official. The Government admits that Gómez was no more familiar with the defendant than the jury, and concedes that Gómez's speculation was inadmissible. The Government argues, however that the error was not prejudicial.

As the Government concedes, the district court erred when it overruled García's objection. As a lay witness, Gómez improperly testified about a non-technical subject which was not beyond the purview of the jury. See Fed R. Evid. § 701;[7] United States v. Muñoz-Franco, 487 F.3d 25, 35 (1st Cir. 2007). The jury was perfectly capable of drawing its own independent conclusion based on the evidence presented.

_____

[7] Rule 701 reads:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

-8-

While the Government's tactics were sloppy at best, its chosen path at trial and the district court's evidentiary ruling do not form a basis for reversal.  The district court's erroneous ruling was harmless because "it is highly probable that the error did not contribute to the verdict."  United States v. Scott, 270 F.3d 30, 46 (1st Cir. 2001); see also United States v. Piper, 298 F.3d 47, 57 (1st Cir. 2002) ("A non-constitutional evidentiary error is harmless (and, therefore, does not require a new trial) so long as it is highly probable that the error did not influence the verdict." (footnote and citation omitted)).  Overwhelming evidence supported the verdict:  Forensic evidence conclusively placed García at the scene of the crime and in the getaway car during the robbery and the ensuing shootout; his alibi was also unconvincing. The Government has satisfied its burden of proving that the error was harmless and that García committed the crimes for which he was convicted.

### B.  First-Degree Murder Charge

#### 1.  Jury Instruction

Normally we review questions of law concerning the district court's charge to the jury de novo, see Muñiz-Olivari v. Stiefel Labs., 496 F.3d 29, 37 (1st Cir. 2007), but when an appellant did not object to the instructions below, we review for plain error, see United States v. De la Cruz, 514 F.3d 121, 136 n.6

(1st Cir. 2008).  On count three, first degree murder, the judge
gave the following jury instruction:

> To kill with malice aforethought ordinarily
> means either to kill another person
> deliberately and intentionally or to act with
> callous and wanton disregard for life.
> However, the government need only prove that
> the killing resulted from a commission of an
> enumerated felony, that is, interference with
> commerce by robbery, in order to establish to
> [sic] requisite of malice aforethought.
>
> Accordingly, to be guilty of first degree
> murder by the virtue of federally [sic] murder
> rule, the defendant need only have committed
> the underlying felony, that is, interference
> with commerce by robbery, and a person, such
> as an alleged accomplice Reinaldo Rolón Rivera
> was killed.

García argues that the court's instruction that he was
guilty of felony murder if he engaged in "interference with
commerce by robbery" instead of "robbery" alone permitted the jury
to convict him of murder in the first degree by his alleged mere
interference with commerce during a robbery, which he claims is not
an underlying felony enumerated in 18 U.S.C. § 1111(a).[8]  García

---

[8]  18 U.S.C. § 1111(a) reads:

> Murder is the unlawful killing of a human being with
> malice aforethought.  Every murder perpetrated by poison,
> lying in wait, or any other kind of willful, deliberate,
> malicious, and premeditated killing; or committed in the
> perpetration of, or attempt to perpetrate, any arson,
> escape, murder, kidnapping, treason, espionage, sabotage,
> aggravated sexual abuse or sexual abuse, child abuse,
> burglary, or robbery; or perpetrated as part of a pattern
> or practice of assault or torture against a child or
> children; or perpetrated from a premeditated design
> unlawfully and maliciously to effect the death of any

-10-

contends that under the court's instruction, the jury was required to believe that interference with commerce during a robbery was an enumerated felony when the jury might otherwise have found that it was not.

García did not object to the instruction at trial, and "the plain error hurdle, high in all events, nowhere looms larger than in the context of alleged instructional errors." United States v. Paniagua-Ramos, 251 F.3d 242, 246 (1st Cir. 2001) (citing United States v. McGill, 952 F.2d 16, 17 (1st Cir. 1991)). "Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001) (citing Johnson v. United States, 520 U.S. 461, 466-67 (1997)). García's claim fails on the first prong of the plain error test.

The Government argues that the "robbery" that is listed in § 1111(a) clearly refers to a violation of 18 U.S.C. § 1951, which requires that robbery affect interstate commerce. We agree. In United States v. Jiménez-Torres, 435 F.3d 3 (1st Cir. 2006), we found no error in an instruction nearly identical to the one given by the district court here in this case. Id. at 10. García cannot

---

human being other than him who is killed, is murder in the first degree.

-11-

demonstrate that an error occurred, and, consequently, his claim fails. We need go no further in the analysis.

## 2. Accomplice Murder

García argues that he was convicted of a crime that he was not charged with committing, claiming that neither the indictment nor the superseding indictment charged him with Rolón's murder. Simply put, García is mistaken. The superseding indictment specifically reads:

> <u>José Antonio García Ortiz</u> . . . did knowingly carry and use firearms . . . specifically interfering with commerce by the robbery of Ralph's Food Warehouse . . . and <u>with malice aforethought, did unlawfully cause the killing of Reinaldo Rolón Rivera</u>, a co-conspirator, through the use of a firearm, in the perpetration of that robbery, <u>which killing is a murder</u>.

(Emphasis added.)

García is also mistaken in his belief that the indictment had to charge that he personally killed his accomplice. Section 1111 does not require that the defendant himself pull the trigger. In <u>United States</u> v. <u>Shea</u>, 211 F.3d 658 (1st Cir. 2000), we said that "under the felony murder rule adopted by section 1111 [] . . ., the killing [during the] robbery was first-degree murder by those who perpetrated the robbery, regardless of who pulled the trigger or any individual intent." <u>Id.</u> at 674. García was convicted of perpetrating the robbery. This is the case because "the statute was intended to adopt the felony murder rule, and for

-12-

a stated felony [-- here, robbery --] the 'malice' element is satisfied by the intent to commit the unlawful felony." Id. García was charged with the murder of Rolón, and he was convicted by the jury. There was no error in his indictment or his conviction for murder.

### 3. Meaning of "Victim" in Sentencing Guidelines

This court reviews the district court's application of law at sentencing de novo. See United States v. Muñiz, 49 F.3d 36, 41 (1st Cir. 1995) (citing United States v. Brewster, 1 F.3d 51, 54 (1st Cir. 1993)). García argues that the Sentencing Guidelines under which he was sentenced in Count Three did not apply to him because he claims that Rolón was not "a victim" within the meaning of the Guidelines. Section § 2B3.1(c)(1) of the Guidelines reads:

> If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder).

Section 2B3.1(c)(1) explicitly applies to robbery. See United States v. Martínez-Bermúdez, 387 F.3d 98, 101 (1st Cir. 2004) (citing United States v. Lebrón-Cepeda, 324 F.3d 52, 61 (1st Cir. 2003) (per curiam)). As we discussed above, García was properly convicted under circumstances that would constitute murder under § 1111. He would have us hold that an alleged co-felon cannot be included in the definition of "victim" if the alleged co-felon were killed during the perpetration of a robbery. We refuse

-13-

to read the word "victim" as narrowly as García suggests. In United States v. Hughes, 211 F.3d 676 (1st Cir. 2000), we said that "§ 2B3.2(c)(1) contemplates that there may be 'victims' . . . other than the target." Id. at 69; cf. Martínez-Bermúdez, 387 F.3d at 102 (applying § 2B3.1(c)(1) to death of unintended target). The "use of the indefinite article [in § 2B3.1(c)(1)] suggests a class of potential victims broader than the target or targets of the [robbery]." Hughes, 211 F.3d at 691. The Fifth Circuit has also used a broader definition of the word "victim." See United States v. Harris, 104 F.3d 1465, 1474-75 (5th Cir. 1997) (finding that person who was not target of a robbery but who was killed in aftermath was "a victim" within the meaning of the guidelines and applying § 2B3.1(c)(1)). Given our discussion above of Shea's adoption of the felony murder rule, it is clear that an alleged co-felon can be "a victim" for the purposes of the Guidelines. The district court did not improperly sentence García under § 2B3.1 (c)(1).

### C. Sufficiency of Evidence

We review a claim of insufficiency of evidence de novo, examining the evidence in the light most favorable to the Government. See United States v. Hall, 434 F.3d 42, 49 (1st Cir. 2006) (citations omitted). "Sufficient evidence may be comprised of direct or circumstantial evidence, or any combination of the two." Jiménez-Torres, 435 F.3d at 8 (citing United States v.

Patel, 370 F.3d 108, 111 (1st Cir. 2004)). "The test is whether the evidence, construed favorably to the government, permitted rational jurors to conclude, beyond a reasonable doubt, that the defendant [is] guilty as charged." United States v. Sebaggala, 256 F.3d 59, 63 (1st Cir. 2001) (citing United States v. Singh, 222 F.3d 6, 9 (1st Cir. 2000)).

As per Federal Rules of Criminal Procedure, García moved for an order of judgment of acquittal in the district court orally and in writing. He also moved for a new trial, claiming that the evidence does not prove beyond a reasonable doubt that he was involved in, or present at, the robbery. García proffers that his conviction was based on two insufficient grounds: (1) a rumor from an informant who did not testify at trial; and (2) the assumption that García's shoulder wound was the result of the crimes charged. García also argues that the evidence against him was insufficient to support a charge under the Hobbs Act.

### 1. Testimony

Brandon Shea, an FBI forensics expert, testified that García's DNA matched DNA taken from evidentiary items collected during the course of the investigation. García was the only one of the six subpoenaed suspects whose samples matched those collected from the scene of the crime. Shea testified to a "reasonable degree of scientific certainty" that García was the source of DNA

-15-

collected from the backseat of the Intrepid.[9]  García's parsing of the DNA evidence presented at trial is ill-conceived.  The fact of the matter is that García's DNA was an exact match for the DNA the police found in the Intrepid.  The Government argues that García's contention that the forensic evidence from the crime does not match his is frivolous.  We agree.  Shea testified that there is no error rate for the properly conducted restriction fragment length polymorphism (known as R.F.L.P.) DNA testing he conducted.  He also testified that the probability that this could have come from someone else is 1 in 87,000,000,000,000,000, and that the margin of error for the test is less than 0.01%.

García's alibi for the time of the robbery does not exonerate him.  At trial, Ballester testified that she was with García on the day of the robbery from 2:00 or 2:30 p.m. until 4:00 or 5:00 p.m. and from 7:30 to 8:00 p.m. until midnight.  The robbery occurred at around noon, and the times she claimed to have been with García still provide ample time for him to have been involved in the robbery.  Moreover, when the FBI first interviewed

---

[9]  García claims that the blood sample taken from the Intrepid did not match his.  This is a simplistic and incomplete statement.  The blood sample that was taken from the Intrepid was from a very weak stain.  There was not enough of a sample for the forensic analyst to confirm that the sample was actually blood.  But that same sample, even though a blood analysis could not be properly and conclusively conducted, did have enough material for the forensic analyst to obtain a complete DNA profile.  The profile found that all thirteen different genetic addresses that are tested in DNA analysis matched García.

Ballester, she said that she did not see García until that evening at his grandmother's house.  But even if Ballester did provide an alibi, the jury is allowed to draw its own conclusion from alibi testimony.  "Credibility determinations are uniquely within the jury's province, and we defer to the jury's verdict if the evidence can support varying inferences."  United States v. Calderón, 77 F.3d 6, 10 (1st Cir. 1996) (internal quotation marks omitted); accord United States v. DiSanto, 86 F.3d 1238, 1246 (1st Cir. 1996).  The Government presented both direct and circumstantial evidence that García perpetrated the robbery.

### 2.  The Hobbs Act

García's conviction was pursuant to the Hobbs Act, 18 U.S.C. § 1951(a).  He asserts that there is no evidence that his alleged conduct had any effect on interstate commerce, and that there was no nexus -- not even a de minimis one -- between the money stolen and interstate commerce.  His assertions are not supported by our case law and we reject his claims.

The Hobbs Act prohibits robbery that "in any way or degree obstructs, delays, or affects commerce." United States v. Nguyen, 246 F.3d 52, 54 (1st Cir. 2001).[10]  Congress enacted the Hobbs Act "to punish interference with interstate commerce by

---

[10]  According to the Hobbs Act "'commerce' means . . . all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof."  18 U.S.C. § 1951(b)(3).

-17-

extortion, robbery, or physical violence." Stirone v. United States, 361 U.S. 212, 215 (1960); accord Jiménez-Torres, 435 F.3d at 7. To successfully prove a violation of the Hobbs Act, "the government must show that the . . . conduct created a realistic probability of a de minimis effect on interstate commerce." United States v. Turner, 501 F.3d 59, 69-70 (1st Cir. 2007) (quoting United States v. Capozzi, 347 F.3d 327, 335 (1st Cir. 2003)) (alteration in original); cf. United States v. Vega Molina, 407 F.3d 511, 527 (1st Cir. 2005) (Hobbs Act violation found where robbery caused business engaged in interstate commerce to close for one day).

It is clear that RFW participated in interstate commerce. RFW has four stores throughout Puerto Rico, and the Government presented evidence that RFW purchases products from suppliers in Miami, Florida and Atlanta, Georgia, among other places. RFW sells products bought from ten to fifteen vendors in the continental United States and collects several millions of dollars in revenue per year. See Jiménez-Torres, 435 F.3d at 8 (interstate nexus found where Government demonstrated that gas station in Puerto Rico participated in interstate commerce by purchasing products from the U.S. Virgin Islands); Capozzi, 347 F.3d at 337.

The "[d]epletion of the assets of a business engaged in interstate commerce is [another] common method for demonstrating that a robbery had an effect on interstate commerce."

-18-

<u>Jiménez-Torres</u>, 435 F.3d at 9. Figueroa's testimony confirmed that the $63,000 that was stolen on the day in question included the proceeds from RFW's sales from the previous day. If nothing else, RFW's assets were depleted by at least $63,000. The Government presented sufficient evidence to demonstrate that RFW was engaged in interstate commerce.

### D. Confrontation Clause Challenge

In a supplemental pro se brief filed by García after we heard oral arguments, he argues for the first time that his Sixth Amendment right to confront witnesses against him was violated when the district court allowed testimony by FBI Agent William Ortiz concerning Ortiz's investigation of the robbery. García's arguments are untimely and thus waived. <u>See</u> <u>United States</u> v. <u>Pizarro-Berríos</u>, 448 F.3d 1, 5-6 (1st Cir. 2006) ("We have consistently held that, except in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived." (citing <u>Piazza</u> v. <u>Aponte Roque</u>, 909 F.2d 35, 37 (1st Cir. 1990))). "Not even plain-error review is available to a party who has waived a claim of error." <u>United States</u> v. <u>Jiménez</u>, 512 F.3d 1, 7 (1st Cir. 2007).

### E. Sentence for Obstruction of Commerce by Robbery

Another argument that García made for the first time in a supplemental brief after oral argument challenged his sentence on

Count One.  Normally, García would have waived this argument.  See id.  There may be times, however, when a possible miscarriage of justice requires us to review non-jurisdictional issues that were not raised by either party below.  See Izquierdo Prieto v. Mercado Rosa, 894 F.2d 467, 471 n.4 (1st Cir. 1990) (citing Schlesinger v. Councilman, 420 U.S. 738, 743 (1985)).  García's improper sentencing presents an opportunity for this court to exercise its prerogative and prevent a miscarriage of justice.  As we found above, García was properly convicted under 18 U.S.C. § 1951.  He was, however, improperly sentenced.  The district court's sentence under U.S.S.G. § 3D1.2(c) for Count One produced a life sentence, even though the maximum for that count is twenty years under 18 U.S.C. § 1951.[11]  The Guidelines cannot supersede the controlling federal statute.  See United States v. Saccoccia, 58 F.3d 754, 786 (1st Cir. 1995) (citing Stinson v. United States, 508 U.S. 36, 43 (1993) and United States v. Fiore, 983 F.2d 1, 2 (1st Cir. 1992)).  The actual timing of García's incarceration remains unaffected since he received a life sentence as to Count Three.  We believe, however, that it is important to correct the improper sentence

---

[11]  18 U.S.C. § 1951(a) reads, in relevant part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . shall be fined under this title or imprisoned not more than twenty years, or both.

(Emphasis added).

since it is clear that the statutory limit is twenty years. Accordingly, we vacate García's sentence for Count One and remand to the district court for resentencing.

### F. Double Jeopardy

This court reviews questions of law de novo. See United States v. Smith, 511 F.3d 77, 81 (1st Cir. 2007) (citing United States v. Charles, 213 F.3d 10, 17-18 (1st Cir. 2000)).

García asserts that the armed robbery with which he was charged contained all the elements of possession of a firearm during the commission of a robbery. He argues that under Blockburger v. United States, 284 U.S. 299, 304 (1932), the underlying crimes with which he was charged constitute a single offense for Double Jeopardy purposes, and a single "crime of violence" within the meaning of § 924(c). Our precedent disposes of the matter, and no further analysis is required. This court held in United States v. Hansen, 434 F.3d 92 (1st Cir. 2006), "that Congress intended § 924(c)'s firearm violation to serve as a cumulative punishment in addition to that provided for the underlying violent crime and that the Double Jeopardy Clause was therefore not offended." Id. at 104 (quoting United States v. González-Arimont, 268 F.3d 8, 13 (1st Cir. 2001)) (internal quotation marks omitted).

### III.  <u>Conclusion</u>

For the foregoing reasons, García's conviction is affirmed, and his sentence for Count One is vacated and remanded to the district court for resentencing.

**<u>Affirmed in part, and Vacated and Remanded in part</u>**.