TORRUELLA, Circuit Judge
(Concurring in part; Dissenting in part).
My colleagues have written a cogent and well-reasoned opinion, much of which I agree with. However, because “we cannot affirm a criminal conviction on the basis of a theory not presented to the jury,” I must dissent. Chiarella v. United States, 445 U.S. 222, 236, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980).
To begin, I reprise the relevant facts. Alberto, Gabriel, and Neliza were indicted on the same charges and tried jointly.[25] There was enough direct and circumstantial evidence presented to the jury to permit it to find that Alberto and Gabriel took Pérez’s car from his person by violence or intimidation, with the aid of a firearm, and that sometime after this “physical taking” they brought Pérez and his car to José’s house for safekeeping.[26] See Castro-Davis, Nos. 08-2108, 08-2109, 2010 WL 2794360, 612 F.3d 53. The evidence as to Neliza’s involvement on the other hand, was not so clear. I agree with the majority that there was no evidence presented that would allow a jury to make a reasonable inference that Neliza was involved in the planning stages of the carjacking, or that she was involved at the “physical taking” of the car from Pérez’s person. See Maj. Op. at 74-75.
The evidence at trial instead showed that Neliza first became involved when she called her brother, José, and told him to step outside his home to receive Gabriel. That phone call, however, did not establish that Neliza knew anything about the carjacking. José testified that soon after receiving the call, he stepped outside to meet Gabriel. His testimony was completely devoid of any mention of Neliza. Conspicuously absent from the record was any inquiry from the government as to Neliza’s whereabouts at this point in José’s testimony.[27] As the majority opinion makes *89 clear, the first time there was any evidence that Neliza learned of the carjacking was many hours after the “physical taking” of Pérez and his car.[28]
As the majority well-states the law, a person cannot be found guilty of aiding and abetting a crime that already has been committed. See SEC v. Papa, 555 F.3d 31, 36 (1st Cir.2009); see also Maj. Op. at 73-74. Similarly for conspiracy. See United States v. O’Campo, 973 F.2d 1015, 1021 (1st Cir.1992) (“Under the doctrine of Pinkerton v. United States, 328 U.S. 640, 645-46, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), a defendant co-conspirator may be held responsible for a substantive crime committed by another conspirator in furtherance of the conspiracy if that crime is committed while the defendant co-conspirator is a member of the conspiracy.” (emphasis added)).
The issue here is therefore about timing. Since Neliza’s involvement could only be found by a reasonable jury after the “physical taking” of Pérez and his car took place, her conviction must be overturned unless the offense of carjacking continued until the time when Neliza first became involved. The majority holds that the law of this circuit is such that the offense conduct of carjacking in this case was still ongoing after the “physical taking” since Alberto and Gabriel remained in control of the victim Pérez and his car. It thus concludes that there was sufficient evidence presented to the jury to convict Neliza based on the theory that the offense conduct of carjacking is ongoing so long as “the carjacker maintains control over the victim and [his or her] car.” See Maj. Op. at 81 (quoting Ramírez-Burgos, 313 F.3d at 30 n. 9).
I do not disagree with the majority’s reading of our case law, although I have serious reservations about the correctness of the abduction rule. First, as the majority explains, the abduction rule was grounded on a case that does not actually support it. See Ramírez-Burgos, 313 F.3d 23, 30 n. 9 (1st Cir.2002)(citing United States v. Vázquez-Rivera, 135 F.3d 172, 178 (1st Cir.1998) (Torruella, C.J.) for the proposition that “the commission of a carjacking continues at least while the carjacker maintains control over the victim and her car.”); see also Maj. Op. at 77 n. 12. We appear to have mechanically repeated this phrase in subsequent opinions without explanation. See, e.g., United States v. Lebrón-Cepeda, 324 F.3d 52, 61 (1st Cir.2003); United States v. Matos-Quiñones, 456 F.3d 14, 19 n. 4 (1st Cir.2006); United States v. Martínez-Bermúdez, 387 F.3d 98, 101 (1st Cir.2004).
Second, the abduction rule shifts the issue from a causal analysis of whether serious bodily injury (§ 2119(2)) or death (§ 2119(3)) results (is causally connected to) to an inquiry that mechanically ends when the carjacker releases the victim and her car. See Ramírez-Burgos, 313 F.3d at 30. In my view, this is a misreading of the statute. As the majority explains, the word “results” merely indicates a causal *90 connection, one not necessarily circumscribed by the time when the offense conduct of the carjacking ends. As an example, it seems clear that if a defendant took a car, shot the victim in the process, and abandoned the car an hour later, we would not say the crime was ongoing over the course of the three weeks it took for the victim to languish in the hospital and die. It also seems clear that in that situation, the carjacker could be convicted under the plain language of § 2119(3). However, under our current abduction rule, he might not be.
Finally, and as relevant later, I do not see where the abduction rule is in any way supported by the plain language of the statute,[29] whether by a plain and commonsensical definition of the word “take” — “to get into one’s hands or into one’s possession, power or control by force or stratagem”[30] — or as derived from the common law of robbery and larceny. It is not apparent to me why a reasonable person would read the carjacking statute and believe that the “taking” of a car under the statute continues while the carjacker maintains control over the victim and his or her car. I simply do not see how a reasonable person would assume that “tak[ing] a motor vehicle ... from the person or presence of another by force and violence or by intimidation,” § 2119(3), is an act that continues past the moment when the carjacker has obtained (i.e., already taken) clear possession (in this case, sometime before Alberto and Gabriel arrived at José’s house).
While I concur with the majority’s analysis of our current law and join in calling for the en banc court to correct this error promptly, I nevertheless cannot join their conclusion.[31] Although it may well be the law of our circuit, the abduction rule theory was never presented to the jury as a basis of conviction. Indeed, the jury was told they could convict on the basis of what the majority calls “pure conjecture.” See Chiarella, v. United States, 445 U.S. at 236, 100 S.Ct. 1108 (finding that “we cannot affirm a criminal conviction on the basis of a theory not presented to the jury”); Cola v. Reardon, 787 F.2d 681, 693 (1st Cir.1986) (holding that it is in violation of due process to affirm a conviction on a basis neither set forth in the indictment nor presented to the jury at trial); see also Dunn v. United States, 442 U.S. 100, 106, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979) (holding that “[t]o uphold a conviction on a charge that was neither alleged in the indictment nor presented to a jury at trial offends the most basic notions of due process.”).
At closing arguments, the government asked the jury to infer that Neliza was involved at the time of the physical taking of the vehicle from Pérez, arguing that it had been Neliza who drove Gabriel and Alberto to the site of the carjacking because “[sjomeone had to keep a gun on [Pérez]” or he would have escaped. The government presented no evidence to support this theory nor did it posit any other theory under which the jury should find *91 Neliza guilty. The jury was never told that Neliza could be legally convicted even if the jury found that she first learned of the carjacking after the “physical taking” had occurred, while Alberto and Gabriel maintained control over Pérez and his car. See Ramírez-Burgos, 313 F.3d at 30 n. 9. Significantly, the government never argued the “abduction rule” as the law of the circuit, neither at trial nor in its appellate brief.[32] Instead, the government asked the jury to infer from the evidence presented that Neliza was involved in the “physical taking” of the carjacking, or possibly even before it, and that she must have known there was a gun being used on Pérez. The majority finds correctly that this theory was “pure conjecture” and that there was not sufficient evidence for a reasonable jury to convict Neliza based on this theory. See Maj. Op. at 74-75.
The instructions given to the jury were also unclear as to the temporal bounds of the offense conduct of carjacking, never specifying that the offense conduct included the time after the “physical taking” and that as such, Neliza could be convicted if the jury found she was involved after Pérez and his car arrived to José’s house. Specifically, the jury was instructed that they should convict if they found that the defendants either conspired or aided and abetted each other in “taking Mr. Pérez’s Mazda by force and intimidation with intent to cause death and serious bodily harm by force, violence, and intimidation, and actually resulting in death.” The instructions were not improper as to the elements, they essentially mirrored the carjacking statute. However, they did not clarify what those elements meant. The instructions left up to the mind of the jury to define “taking” in what I view as an unsupportable extension — that is, as including the conduct of defendants after they arrived at José’s house. By not defining our case law on the subject of carjacking and not specifying that the act of carjacking in this case would legally continue up until the moment that the carjackers lost control of the victim or his car, and because this is by no means an obvious or natural interpretation of the instructions, the only inference we have left is that the jury convicted Neliza on the government’s theory at trial which the majority now finds to be insufficient to sustain her conviction.
“The Supreme Court has ruled that where a jury is given the option of choosing between factually adequate and factually inadequate theories of guilt, jurors ‘are well equipped to analyze the evidence’ and can be counted upon to base their verdict upon the factually adequate theory.” Santellan v. Cockrell, 271 F.3d 190, 196 (5th Cir.2001) (citing Griffin v. United States, 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)). However, that is not the case here. Here the jury was given one theory of guilt: that Neliza was present at the moment of the “physical taking.” The jury was never told the theory that the majority now uses to affirm her conviction: that Neliza was involved after the “physical taking” but while the carj ackers remained in control of Pérez and his car. That a jury might have “divined [this] theory from the facts” and from the law as read to them in the jury instructions is not sufficient. Cola, 787 F.2d at 699 n. 19. “The problem with th[at] view ... is the serious risk involved that the jury did not *92 so divine the appellate theory, and instead, that it convicted based on the erroneous or noncriminal theories before it.” Id. Barring any kind of explanation as to the law of our circuit explaining the abduction rule, I simply do not see how a jury might have divined it.
I view this case as analogous to the Supreme Court’s decision in Chiarella. 445 U.S. 222, 100 S.Ct. 1108. In that case, the employer of a financial printer engaged to print corporate takeover bids was convicted based on his purchase of stock in target companies without informing its shareholders of his knowledge of proposed takeovers. Id. at 224-25, 100 S.Ct. 1108. The Supreme Court held that his conduct did not violate the Securities Exchange Act and thus his conviction was improper. Id. at 224-35, 100 S.Ct. 1108. In its brief to the Court, the government for the first time offered an alternative theory to support the conviction, arguing that petitioner’s conviction could be affirmed on the basis that he owed a duty to the corporation that had hired the printing company. Id. at 235, 100 S.Ct. 1108.[33] The Supreme Court reaffirmed the maxim that “we cannot affirm a criminal conviction on the basis of a theory not presented to the jury,” and held that the jury instructions and the government’s theory at trial showed that the jury had convicted on the theory of petitioner’s failure to disclose to shareholders, and not on a duty owed to anyone else. Id. at 236, 100 S.Ct. 1108.
Similarly in our previous decision in Cola, 787 F.2d 681, we granted habeas because the defendant had no notice at trial of the theory which was eventually used by the state appeals court to uphold his conviction. Citing to Dunn, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743, and granting habeas, we worried about the “sixth amendment problems of whether defendants have ever been presented with an opportunity to confront, in a fact-finding forum, the government’s final theory of guilt” and noted that it was “not clear whether an opportunity has been provided to have guilt determined by a jury in the first instance [on that theory].” Cola, 787 F.2d at 701. Just like in Dunn, our court found that “the prosecution in Cola’s trial did not build its case on the evidence supporting the appellate theory,” and rejected the assumption “that the jury would somehow divine, and independently articulate, the appellate theory.” Id. at 700; Dunn, 442 U.S. at 106, 99 S.Ct. 2190 (“[Wjhile there was no variance between the indictment and proof at trial, there was a discrepancy between the basis on which the jury rendered its verdict and that on which the Court of Appeals sustained petitioner’s conviction.”).
That there was evidence presented sufficient to convict Neliza as an accessory after the fact under 18 U.S.C. § 3, there is no doubt in my mind.[34] However, the government did not charge Neliza as an accessory after the fact. Neliza was charged in the same way as Alberto and Gabriel: as an aider and abettor and conspirator to carjacking and to carrying a firearm during a carjacking. The firearm charge proved to be patently baseless, and a directed verdict should have been entered by the district court upon Neliza’s Rule 50 motion. We correct that error now and I fully join the majority in its *93 decision as to that charge. But because the majority upholds Neliza’s conviction on a theory which was never presented to the jury, I cannot join in upholding her conviction as to the other two counts.

. Count I of the indictment charged defendants under 18 U.S.C. § 371 (conspiracy to commit carjacking), Count II under 18 U.S.C. §§ 2119(3) and 2 (aiding and abetting a carjacking resulting in death), and Count III under 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (using or carrying a firearm in connection with a carjacking).

. I will refer to "physical taking” as the time period during which the carj acker obtains possession of a motor vehicle while in the presence of another. In the present case, that "physical taking” ended once Pérez and his car were captured by the carjackers and one of them began to drive it.

. A reading of the trial transcript evinces copious use of the word "they” by both the prosecution and witnesses, with no attempt made to clarify whether "they” referred to Alberto, Gabriel and Neliza; Alberto and Gabriel; or some other combination of the three. In fact, when José testifies that Gabriel and Alberto brought Pérez to the house, the prosecutor does not ask whether Neliza (who José had testified had called him to come out of his house to receive Gabriel) also came with Alberto and Gabriel. Instead, the prosecutor next asks José: "Okay. So you were told that Gabby and whoever were going to an ATM machine ....” (emphasis added). As the majority points out, the government seems to *89 have chosen the same strategy on this appeal, referring to appellants generically as "appellants" and not individually. Maj. Op. at 75 n. 9.

. All the evidence points to the "physical taking” taking place in the early hours of the afternoon. José testified that it was "getting dark” when Neliza called. The official record of the Astronomical Applications Department of the U.S. Navy indicates that sundown was at 7:04 pm on July 15, 2006. Naval Oceanography Portal: Sun Or Moon Rise/Set Table for One Year: U.S, Cities and Towns at http:// www.usno.navy.mil/USNO/astronomical-applications/data-services/rs-one-year-us (last visited June 15, 2010). At least three hours, and probably closer to five hours passed between the "physical taking” and Neliza's involvement.

. 18 U.S.C. § 2119(3) reads:
Whoever with the intent to cause death or serious bodily harm tal<es a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall ... if death results, be fined under this title or imprisoned, any number of years up to life, or both, or sentenced to death.
(emphasis added).

. Webster’s Third New International Dictionary Unabridged 2329 (1976).

. I do, however, join the majority’s conclusion that there was no evidence to support the gun charge against Neliza.

. Indeed, the government’s appellate brief cites most of the cases the majority discusses as setting out the abduction rule, but it cites them for the issue of whether sufficient evidence was presented as to the conditional intent to cause serious bodily harm or death. See Gov't Brief at 21-23. Naturally, Neliza also did not raise this theory at trial or on appeal.

. I note that the government in this case has not brought up the abduction rule at any point in these proceedings.

. Neliza can also be properly charged in the Commonwealth courts for the various state crimes which, if proven by proof beyond a reasonable doubt, could very well result in her conviction for several serious felony offenses.